UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIDGITTE DECKER et al.,                           Case No.:  09 cv 9878 (SAS)

                    Plaintiffs

       -against –

NAGEL RICE et al.,

                  Defendants

---

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING JAMES F. LOWY, ESQ.'S PERMISSION TO APPEAR BEFORE THIS COURT *PRO HAC VICE*

> WILSON, ELSER, MOSKOWITZ, EDELMAN
> & DICKER LLP
> *Attorneys for Defendants*
> Nagel Rice LLP, Jay Rice, Esq., Kohn, Swift &
> Graf, P.C. and Robert A. Swift, Esq.,
> 150 East 42nd Street
> New York, New York 10017-5639
> (212) 490-3000
> File No. 01224.00685

> ABRAMS, GORELICK, FRIEDMAN &
> JACOBSON, P.C.
> *Attorneys for Defendants*
> Speiser Krause LLC and Ken Nolan
> 1 Battery Park Plaza, 4th Floor
> New York, New York 10004
> (212) 422-1200
> File No. 7261

## PRELIMINARY STATEMENT

Defendants NAGEL RICE LLP, JAY RICE, ESQ., KOHN, SWIFT & GRAF, P.C., ROBERT A. SWIFT, ESQ., SPEISER KRAUSE, LLC AND KEN NOLAN (collectively the "Defendants") respectfully oppose plaintiffs' motion for an Order permitting James F. Lowy, Esq. ("Mr. Lowy") admission *pro hac vice* to the bar of this Court[1]. The basis for Defendants' opposition is three-fold: (a) Mr. Lowy is a material factual witness in this litigation based squarely on the issues framed in the Complaint; (b) Mr. Lowy has already been sued by one of the plaintiffs in this action in a prior legal malpractice that attacked Mr. Lowy's handling of the same litigation at issue in this case; and, finally, (c) should this case proceed past a motion to dismiss, Mr. Lowy will inevitably be named as a third-party defendant in this action based upon his handling of the plaintiffs' claims from 2005 to the present.  As such, Lowy's admission to practice before this Court should be denied.

As the Court is aware, this legal malpractice action arises out of the Defendants' handling of the litigation that followed the November 2000 ski train fire in Kaprun, Austria (the "Ski Train Fire").   In addition to a mediation which took place in Austria, multiple lawsuits were commenced in the United States, on behalf of both U.S. and non-U.S. citizens ("the Foreign Plaintiffs"), arising from the Ski Train Fire, which were ultimately consolidated before this Court and a multidistrict litigation (the "MDL Action") was eventually initiated. As the Court is intimately aware of the proceedings in the MDL Action, the facts giving rise to the instant action will only be reiterated to the extent they pertain to Mr. Lowy's motion for *pro hac vice* admission to this Court.

---

[1] All references to Plaintiffs' Motion for *Pro Hac Vice* admission of James F. Lowy, Esq., supported by the Declaration of Joy Hochstadt, dated February 4, 2010, will hereinafter be referenced as "Hochstadt Decl. ____."

## ARGUMENT

## POINT I

## LOWY'S PRO HAC VICE APPLICATION MUST BE DENIED AS HE IS A MATERIAL WITNESS, A POTENTIAL DEFENDANT IN THIS LITIGATION AND HE HAS ALREADY TAKEN POSITIONS CONTRARY TO THE PLAINTIFFS IN THIS ACTION

The decision of whether to grant a motion to admit an attorney to practice *pro hac vice* rests with the discretion of the district court. *See Erbacci et al. v. United States, et al.,* 923 F. Supp. 482, 485 (S.D.N.Y. 1996), *reconsid. denied,* 166 F.R.D. 298 (S.D.N.Y. 1996).*United States v. International Bhd. of Teamsters,* 1996 U.S. Dist. LEXIS 9403 (S.D.N.Y. 1996). This authority derives from a court's inherent power to preserve the integrity of the adversary process. In exercising this power, courts balance a client's right to freely choose his counsel against the need to maintain the highest standards of the profession. *Amusement Indus. v. Stern,* 657 F. Supp. 2d 458 (S.D.N.Y. 2009).

This Court has recently stated that when an individual takes on the role of both advocate and witness "it may so blur the line between argument and evidence that the jury's ability to find facts is undermined." *Amusement Indus. v. Stern,* 657 F. Supp. 2d 458, 461 (S.D.N.Y. 2009) (quoting *Ramey v. Dist. 141 Int'l Ass'n of Machinists & Aerospace Workers,* 378 F.3d 269 (2d Cir. 2004). It stands to reason that if an attorney would be disqualified from serving as counsel for a party, he/she should not be granted admission *pro hac vice* in the first place. Disqualification of counsel is required when the testimony to be given by the witness is necessary, (*Ross v. Blitzer,* 2009 U.S. Dist. LEXIS 119014 (S.D.N.Y.) *quoting, Gabayzadeh v. Taylor et al.,* 639 F. Supp. 2d 298, 303 (E.D.N.Y. 2009) (internal citations omitted)), would be prejudicial to the client (i.e., sufficiently adverse to the factual assertions or events offered by the client) (*Lamborn v. Dittmer et al.,* 873 F.2d 522 (2d Cir. 1989), and the integrity of the judicial

system will otherwise suffer (*Ross v. Blitzer*, 2009 U.S. Dist. LEXIS 119014 (S.D.N.Y.) (quoting *Lamborn, supra*)).

Two of the primary allegations asserted by the plaintiffs[2] in the case at bar are that the Defendants committed legal malpractice by, *inter alia*, (1) failing to seek certification of the Foreign Plaintiffs as part of an Opt-Out class in 2004, 2005 or 2006; and (2) failing to have the Court's dismissal of the claim against Siemens AG Osterreich ("Siemens AG") reversed. Hochstadt Decl. FN 1. The defense of these claims, to the extent they are even viable causes of action will depend directly upon testimony and evidence that will be coming from Mr. Lowy, as counsel for the Foreign Plaintiffs from 2005 through the present date. Here, plaintiffs' motion for Mr. Lowy's admission *pro hac vice*, attempts to articulate the substantive basis for the claims of malpractice against the Defendants. See Hochstadt Decl. ¶ 18 and FN 1. However, it instead provides a road map as to exactly why Mr. Lowy cannot appear as counsel for the Foreign Plaintiffs. As demonstrated herein, Mr. Lowy's involvement as counsel of record in the MDL Action at the time of the alleged malpractice, his statements in prior proceedings, as well as the fact that he has already been sued for malpractice by one of the same plaintiffs in this action, all warrant denial of his *pro hac vice* application.

### A.     As Lowy Was Counsel To The Foreign Plaintiffs In 2005/2006 He Is A Material Witness

The fact that Lowy will indisputably be a material witness is actually proven by plaintiffs in their Complaint as well as their counsel, Ms. Hochstadt, in her declaration in support of Mr. Lowy's *Pro Hac Vice* motion. Of primary concern is the fact that Ms. Hochstadt alleges that the Defendants were negligent in "the failure to re-file an Opt-Out Class action in 2004, 2005, or

---

[2] Plaintiff's allegations are deemed true solely for purposes of this motion. This motion should not be deemed an admission by the defendants of any assertion by the plaintiffs in the Complaint or the pending *pro hac vice* motion.

3874866.1

2006 . . . ." Hochstadt Decl., ¶18(iii).  As demonstrated below, the evidence uncovered by Defendants without any discovery has already revealed that Mr. Lowy was counsel of record for the Foreign Plaintiffs starting as early as February 2006.  Thus, if as Ms. Hochstadt contends, there was any alleged malpractice with respect to the failure to re-file an Opt-Out class to include the Foreign Plaintiffs – it clearly occurred on Mr. Lowy's watch.

At the onset of the MDL Action, the putative class, defined by Your Honor as "all heirs, beneficiaries and personal representatives" of all individuals who died in the fire "who consent to inclusion," moved this Court for class certification and the appointment of class-counsel was to be decided.  When this Court certified the class, it granted certification upon the condition that the Defendants continue to work with Edward D. Fagan as liaison counsel for the non-American class members – the plaintiffs herein. Exhibit A. On December 20, 2004, the class was decertified by the United States Court of Appeals. Exhibit B. On May 16, 2005, the United States Supreme Court denied the Defendants' petition for Writ of Certiorari. In late June of 2005, the Defendants advised the members of the then decertified class that, as a result of the foregoing, they would no longer be representing any of the Foreign Plaintiffs in the American litigation. Exhibit C.

On November 2, 2005, a hearing was held before Your Honor, during which time the Foreign Plaintiffs, represented solely by Fagan, moved to intervene. At that hearing, Fagan made the following statement, confirming his exclusive representation of the Foreign Plaintiffs:

> Court: Mr. Fagan, is it correct that there's no one else representing the foreign plaintiffs on that motion but you? Just, please, yes or no.
>
> Mr. Fagan: Yes, Your Honor.
>
> ***

Court:        So they're -- all your clients are foreigners?

Mr. Fagan:    Yes, Your Honor.

Exhibit D.

Mr. Lowy has submitted conflicting statements as to when he truly started representing the Foreign Plaintiffs. He has submitted one affidavit asserting that he began representing the Foreign plaintiffs as early as 2005. Exhibit E, ¶ 16. He then submitted a letter to the defense counsel in the Kaprun litigation stating that he began representing the Foreign Plaintiffs in February 2006. Exhibit F. ("From February, 2006 until October 2007, Mr. Lowy represented 247 victims' family members and 10 survivors of the November, 2000 Kaprun, Austria ski train fire before the United States District Court for the Southern district of New York and Hon. Shira Scheindlin (MDL 01-1428), the United States District Court for the Middle District of Florida, and the Panel on Multidistrict Litigation in Washington, DC (MDL)"). Exhibit F. By correspondence dated April 20, 2006, Fagan wrote to Your Honor advising that he was plaintiffs' counsel in the *Batori*, *Geier* and *Mitsumoto* actions (the "Individual Actions"). In that same letter, Fagan advised the Court that Mr. Lowy would be seeking *pro hac vice* admission. Exhibit G.

Further evidencing Lowy's representation of the Foreign Plaintiffs in 2006 (and the fact that the Defendants were only counsel to the American victims) is the following correspondence:

| June 8, 2006 (Exhibit H) | Letter to Jay J. Rice, Kenneth P. Nolan, and Robert Swift from Robert J. Hantman | Acknowledges that after the class was decertified, the Defendants representation of non-American victim families ceased. This correspondence further explains that although the Defendants might have been court appointed class-counsel for the foreign plaintiffs prior to |

5

| | | decertification, Mr. Hantman is now counsel for these same non-Americans. |
|---|---|---|
| June 15, 2006 (Exhibit I) | Letter to Honorable Shira A. Scheindlin from Robert J. Hantman | Mr. Hantman states: "Our firm is co-counsel for the non-U.S. plaintiffs in the *Batori/Blaimauer, Geier* and *Mitsumoto* matters. |
| August 18, 2006 (Exhibit J) | Email from Edward Fagan to Michael Perle, Esq. | "Everything we wanted to achieve at yesterdays conference we achieved AND MORE. Those present were the new US team (Ed Fagan, Robert Hantman, Bryan Ha and James Lowy), Ken Nolan for the American victims…" |
| August 31, 2006 (Exhibit K) | Letter to the Honorable Theodore Katz, USDC, SDNY from Defendant Jay J. Rice | Mr. Rice advises the Court that he, along with Defendants Swift and Nolan, represent the families of the 8 *American* victims of the Ski Train Fire. |
| August 31, 2006 (Exhibit L) | Email correspondence from Edward Fagan to Defendant Jay J. Rice admitting that the Lowy will be serving as co-counsel for the foreign plaintiffs | Mr. Fagan states: "PLEASE NOTE THAT: James Lowy is co-counsel of record with regard to the *Blaimauer, Geier & Mitsumoto* claims and SHOULD be included on ALL distribution lists." |

In a related proceeding (involving a claim of malpractice against Mr. Lowy, discussed below) counsel for Mr. Lowy confirmed:

> **"Fagan, before being disqualified was lead counsel for the non-U.S. plaintiffs**. The U.S. Citizens were represented by Jay J. Rice, Esq., the firm of Nagel Rice, LLC, Robert A. Swift, Esq., the firm of Kohn Swift & Graf, the firm of Speir Krause, LLC, and Ken Nolan, Esq., and a German lawyer, Michael Witti, Esq. was associated with the lawyers for the American plaintiffs. **Mr. Lowy was one of Fagan's co-counsel.** Mr. Hantman also became a co-counsel in 2006."

Exhibit M (emphasis added).

The Foreign Plaintiffs and their local foreign-counsel, have themselves acknowledged Mr. Lowy's representation. For example, Plaintiff Geier, stated the following:

> On my father's behalf and with other Kaprun victims and/or survivors, and at different times through the last year, I have met with Mr. James Lowy and Mr. Robert Hantman and we all know that they are also working in the cases with Mr. Fagan and without our knowledge and consent. Messrs. Hantman and Lowy's involvement was formally introduced to us at a meeting in Salzburg in July 2006, to which Mr. Fagan invited all his clients and where the majority of them or their representatives were present. Based on conversations I had with most of the victims and survivors from Vilsek, I know that they have full confidence in Mr. Fagan, with his US team which includes Mr. James Lowy as to the Florida action and Mr. Robert Hantman in the NY cases…"

(Exhibit N).

Apparently aware of the problems in using Mr. Lowy, Ms. Hochstadt and Mr. Lowy attempt to explain away Mr. Lowy's materiality by stating that "he was not involved in the case at all at the time when **most of the acts of malpractice occurred**." Hochstadt Decl., ¶14 (emphasis added); see also Lowy Decl. ¶12. By simple deduction, Ms. Hochstadt's statement leaves only one conclusion – at least **some of the acts** of malpractice occurred while Mr. Lowy was counsel of record for the Foreign Plaintiffs. In his Declaration in support of admission before this bar, Mr. Lowy states, under oath, that he has "no first hand knowledge that could make [him] a witness," (Lowy Decl., ¶ 12), yet, as set forth above, the evidence establishes otherwise. (Exhibits E-N). Mr. Lowy's representation of the Foreign Plaintiffs at any point where the malpractice complained of actually occurred makes him a material witness.

Likewise, even if Mr. Lowy can explain away his own involvement in representing the Foreign Plaintiffs, he will be a material witness with respect to the role of co-counsel, Edward Fagan and Robert Hantman's representation of the Foreign Plaintiffs. If plaintiffs' claim

proceeds past a motion to dismiss, Mr. Lowy will be permitted to act as an advocate for the plaintiffs on a claim where he will indisputably need to testify and provide evidence. As such, his application for *pro hac vice* admission should be denied.

### B.     MR. LOWY'S DUTY OF CANDOR TO THE COURT REQUIRES THAT HIS *PRO HAC VICE* MOTION BE DENIED

Further evidencing the fact that admitting Mr. Lowy on a *pro hac vice* basis is inappropriate is the fact that he has already been sued for malpractice by one of the plaintiffs in this case. The Rules of Professional Responsibility also impose upon attorneys a duty of candor in all representations they make before a tribunal. ABA Model Code Canon 9. It is submitted that Mr. Lowy cannot maintain this duty of candor before this Court when he has himself been sued for legal malpractice by at least one of the plaintiffs in this action.

The Court is directed to the complaint filed in this Court, entitled Edward D. Fagan, Esq., Dr. Bernd Geier and Dr. Gerhard Podovsovnik, vs. James J. Lowy, Esq., International Law Group, LLC, Florida Law Group, LLC, Michael R. Perle, Esq., and Michael R. Perle, P.C., Case no. 07-CV-10293 (LAK)[3] (the "Lowy Malpractice Complaint") Exhibit P. In that lawsuit, two plaintiffs (not including Mr. Fagan), including one of the plaintiffs in this action, Dr. Bernd Geier, accused Mr. Lowy of committing legal malpractice in the handling of the MDL Action. For example, the Lowy Malpractice Complaint alleges, *inter alia*:

> "37.    Defendants Lowy, FLG and ILG failed and/or refused to do work on filed motions or to assist in discovery related to The Kaprun Cases.
>
> 40.    After the Kaprun Cases were dismissed in June 2007, despite requests for assistance Defendants Lowy, FLG and ILD

---

[3] That case was brought in New York Supreme Court under Index #: 115473/07, and was apparently removed to this Court under case number 07cv10293.

3874866.1

failed and/or refused to provide assistance and/or financial support
necessary to Motions for Reconsideration and/or appeals."

Exhibit O.

How can Mr. Lowy now ask to represent a plaintiff (Geier) that has already commenced a

legal malpractice action against him complaining of Mr. Lowy's handling of the MDL Action on

behalf of the Foreign Plaintiffs?

Likewise, the document (not translated) that Plaintiffs have annexed to the motion for

*pro hac vice* admission, as support for their contention that the Defendants' files are needed on

an expedited basis -- a Notice of March 18, 2010 Hearing in Salzburg Austria, appears to be

directed to "Mag. Dr. Gerhard PODOVSOVNIK" who, coincidentally is one of the other named

plaintiffs in the Lowy Malpractice Action.   During the pendency of the Lowy Malpractice

Action, Dr. Gerhard Podovsovnik made the following sworn statements in an October 29, 2007

declaration:

> "1.    I am an Austrian lawyer and I have worked together with
> Edward D. Fagan since 2003.
>
> 10.    From mid-September 2007 to the present, Mr. Lowy caused
> confusion and direct damages to our class.
>
> 11.    Mr. Lowy wrote letters to the Court claiming that he was
> retained by clients (Kaprun clients - the ones to which he
> referred were and are my clients), when in fact that was not
> true.
>
> 12.    Mr. Lowy misled the Court and defendants into believing
> he had authority and was competent to act on behalf of my
> clients, when in fact that was not true.
>
> 14.    Mr. Lowy disclosed litigation and appellate strategy to
> defendants without our authorization, without retainers and
> which disclosures caused my clients' damages.

9

18.     Mr. Lowy is a menace to our claims and he must be
stopped."

Exhibit P. If Mr. Lowy is now working with Dr. Podovsovnik with respect to the

handling of an upcoming Austrian hearing on behalf of the plaintiffs – one must question the

stunning turn of events that evolved from Dr. Podovsovnik suing Mr. Lowy and making the very

serious accusations against Mr. Lowy in his declaration on October 29, 2007, to the present date

where they appear to possibly be working together.  Whatever the explanation offered by Mr.

Lowy, the duty of candor to this Court has been less than forthcoming and the issue of whether

there was any type of *quid pro quo* that resulted in this change of heart by both Dr. Geier and Dr.

Podovsovnik will have to be explored during discovery if this case proceeds.  Accordingly, Mr.

Lowy's application should be denied on this basis as well.

## C.     MR. LOWY'S PRIOR SWORN STATEMENTS PREVENT HIM FROM ZEALOUSLY REPRESENTING THE FOREIGN PLAINTIFFS

As discussed before the Court during the conference on February 4, 2010, one of the key

issues in this case will be the Defendants' position that several of the plaintiffs in this action

were never represented by the Defendants – or, at worst, were not represented in the MDL

Action after the U.S. Court of Appeals decertified the class.

In a sworn affidavit submitted to this Court during the Lowy Malpractice Action, Mr.

Lowy argued that one of the plaintiffs suing him in that action, Dr. Bernd Geier "[was] never [a]

plaintiff[] in <u>Kaprun</u>," (Exhibit E, ¶21).  Referring to Dr. Geier and Dr. Podovsovnik as "new

plaintiffs," Mr. Lowy then claimed that "neither of whom were 'clients' in <u>Kaprun</u>." Exhibit E,

¶22 (specifically noting that only Dr. Geier's father was a plaintiff in the Kaprun litigation).  If

Mr. Lowy has already gone on record as contending that Dr. Geier was never a plaintiff in the

10

MDL Action, how can he act as counsel for Dr. Geier in this action – claiming that Dr. Geier was a plaintiff in MDL Action?

### D.    LOWY'S ADMISSION TO THIS BAR IS IMPROPER BECAUSE HE IS LIKELY TO BE NAMED AS A THIRD-PARTY DEFENDANT IN THIS ACTION

It is well-settled that an attorney defending a malpractice action may maintain a third-party action for contribution and/or indemnification against attorneys who subsequently, and/or independently represented the client, to the extent that the successor attorneys contributed to or aggravated the client's damages, regardless of privity. *Bolton v. Weil, Gotshal & Manges, LLP,* 2005 NY Slip Op 51410U; 806 N.Y.S.2d 443 (N.Y. Sup. Ct., N.Y. County 2005); *Herkrath v. Gaffin & Mayo, P.C.,* 192 A.D.2d 487, 597 N.Y.S.2d 34 (1st Dept. 1983); *Hansen v. Brognano,* 37 A.D.2d 880, 524 N.Y.S.2d 862 (3d Dept. 1988).  This is because it is well settled that where successor counsel had sufficient time to adequately protect a plaintiff's rights, there can be no evidence to support a finding that the defendants' alleged negligence proximately caused plaintiff any injury. *Golden v. Cascione, Chechanover & Purcigliotti,* 286 A.D.2d 281, 729 N.Y.S.2d 140, 141 (1st Dept. 2001) (citing *Kozmol v. Rothenberg,* 241 A.D.2d 484, 485-486, 660 N.Y.S.2d 63 (2d Dept. 1997) (defendant law firm, which had failed to effect valid service of process on client's adversary, resulting in dismissal of action for lack of personal jurisdiction after expiration of statute of limitations, could not be held liable for loss of client's claim, because successor counsel retained prior to such dismissal could have commenced a new action within 120 days thereafter, pursuant to CPLR 306-b); *Greenwich v. Markhoff,* 234 A.D.2d 112, 114, 650 N.Y.S.2d 704 (1st Dept. 1996) (complaint seeking liability for failure to commence an action prior to the expiration of statute of limitations was properly dismissed as against first law

firm because, *inter alia*, such counsel had no "responsibility for allowing the Statute of Limitations to expire some two years" after it had been discharged).

As set forth above, Lowy was counsel of record in 2005 and 2006 (Exhibits E-P), during the very time plaintiffs allege various purported acts of malpractice were occurring. Assuming that plaintiff were to defeat the Defendants' forthcoming motions to dismiss, and the Defendants are compelled to interpose an Answer, Mr. Lowy, as well as Mr. Fagan and Mr. Hantman are inevitably going to be named as third party defendants – based upon their handling of the Foreign Plaintiffs' cases. As detailed above, in Point I(A), Mr. Lowy was counsel of record for the Foreign Plaintiffs as early as 2005 (Exhibit E) and as discussed below, throughout an appeal before the U.S. Court of Appeals for the Second Circuit decided in December 2009.

To the extent that the plaintiffs' complaint (combined with the allegations in the Hochstadt Declaration) can be deemed to assert claims arising from a purported failure to re-file for class certification including the Foreign Plaintiffs as an Opt-Out class in 2005 and 2006, as well as any claims arising from the failure to pursue claims against Siemens Austria – those failures will be directly attributable to Mr. Lowy as he was counsel of record for the Foreign Plaintiffs in 2005 and 2006, and apparently handled the appeal from the Final Judgment in the MDL Action – which would have included the ability to challenge this Court's interlocutory rulings regarding the dismissal of Siemens Austria.

Mr. Lowy represented the Foreign Plaintiffs as early as 2005 is discussed in Point I(A) above. If there was an ability to do what plaintiffs now claim was malpractice – re-file an opt-out class including the Foreign Plaintiffs – Mr. Lowy, along with his other counsel, Mr. Fagan and Mr. Hantman, will bear the responsibility for that purported failure. On May 25, 2006, Mr. Fagan along with Robert Hantman, Brian Ha, and Mr. Lowy represented the non-American

3874866.1

plaintiffs who were originally part of the Opt-In class, prior to it being decertified. Before the Court, *inter alia*, was a request by Mr. Fagan to set July 13, 2006 as the date by which any and all persons and/or victim families who were represented in, by, or as former members of the Opt-In Class to join or have their claims represented in the existing Individual Actions. By Order dated May 31, 2006, Mr. Fagan's request was granted by this Court. (Exhibit Q). Upon information and belief, Mr. Lowy failed to seek to re-file a new opt-out class including the Foreign Plaintiffs. As such, Mr. Lowy would be the proximate cause of these Foreign Plaintiffs' purported damages.

Moreover, to the extent plaintiffs are insisting the Foreign Plaintiffs had a viable claim against Siemens Austria that could be prosecuted in the United States (a position with which the Defendants only accept as true for purposes of this motion) Mr. Lowy apparently failed to prosecute the appeal from the Court's dismissal of Siemens AG and the motion seeking leave to re-file an amended complaint against Siemens in California.

The claim against Siemens Austria was dismissed in 2002 for lack of jurisdiction. The Court later denied a motion seeking to sever the claims against Siemens Austria and to file an amended complaint showing personal jurisdiction existed over Siemens Austria in California. 224 F.R.D. 543 (May 5, 2004). ) Thereafter, a motion for certification of the issue to the Second Circuit, pursuant to FRCP 54(b), was denied, with this Court expressly noting that the plaintiffs still had the ability to appeal the decision after a final judgment was entered. *In re: Ski Train Fire In Kaprun, Austria*, 2005 U.S. Dist. LEXIS 12701 (S.D.N.Y. 2005). (Exhibit R).

On April 6, 2009, pursuant to prior orders dismissing the various actions, this Court entered a final judgment closing the MDL Action and directed the parties attention to Rule 4(a)(1) of the Federal Rules of Appellate Procedure which permitted the foreign plaintiffs to

appeal the Judgment within 30 days of April 6th. (Exhibit S). As set forth above, in April of 2009 Mr. Lowy was counsel to the Foreign Plaintiffs. Confirming this representation is the Notice of Appeal dated May 6, 2009 filed by Mr. Lowy. (Exhibit T). If, as plaintiffs contend, there were viable claims against Siemens Austria that could have been litigated as part of the MDL Action, it appears that Mr. Lowy failed to seek appellate review of this Court's decision. If that is, in fact, true, then Mr. Lowy will be liable as successor counsel to the Defendants – and as such, cannot represent the plaintiffs in this action.

## POINT II

### THE BALANCE OF PLAINTIFFS' REQUESTS
### FOR RELIEF IN THE MOTION MUST BE DENIED

Although plaintiffs indicated during the February 4, 2010 conference that the motion that they filed that same day was related to Mr. Lowy's *pro hac vice* application, the motion also contained various requests for pre-answer discovery. As all discovery were addressed by this Court during the February 4, 2010 conference (a copy of the transcript is annexed hereto as Exhibit U), it is respectfully requested that the remaining requests for relief in plaintiffs' motion also be denied.

## CONCLUSION

For the reasons stated above it is respectfully requested that this Court issue an Order denying Lowy's request for admission to practice before this Court *pro hac vice* and denying all other aspects of the plaintiffs' motion.

Dated:     New York, New York
           February 16, 2010

                    Yours etc.,
        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:

           Brett A. Scher, Esq.
           Lauren J. Rocklin, Esq.
           WILSON, ELSER, MOSKOWITZ, EDELMAN &
           DICKER LLP
           *Attorneys for Defendants*
           NAGEL RICE LLP, JAY RICE, ESQ., KOHN,
           SWIFT & GRAF, P.C. AND ROBERT A. SWIFT,
           ESQ.,
           150 East 42nd Street
           New York, New York 10017-5639
           (212) 490-3000
           File No. 01224.00685/10330.00101

By:

           Barry Jacobs, Esq.
           ABRAMS, GORELICK, FRIEDMAN &
           JACOBSON, P.C.
           *Attorneys for Defendants*
           Speiser Krause LLC and Ken Nolan
           1 Battery Park Plaza, 4th Floor
           New York, New York 10004
           (212) 422-1200
           File No. 7261

15

3874866.1