UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIDGITTE DECKER et al.,                    Case No.: 09 cv 9878 (SAS)

            Plaintiffs

    -against –

NAGEL RICE et al.,

            Defendants

---

**JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS NAGEL RICE LLP, JAY RICE, ESQ., KOHN, SWIFT & GRAF, P.C., ROBERT A. SWIFT, ESQ., SPEISER KRAUSE, LLC AND KEN NOLAN, ESQ. , PURSUANT TO FED. R. CIV. P. 12(b), FED. R. CIV. 9(b) AND N.Y. C.P.L.R § 214(6)**

 

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
Brett A. Scher, Esq.
Lauren J. Rocklin, Esq.
*Attorneys for Defendants*
NAGEL RICE LLP, JAY RICE, ESQ., KOHN,
SWIFT & GRAF, P.C. AND ROBERT A. SWIFT,
ESQ.,
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File No. 01224.00685/10330.00101

ABRAMS, GORELICK, FRIEDMAN &
JACOBSON, P.C.
Barry Jacobs, Esq.
*Attorneys for Defendants*
SPEISER KRAUSE LLC AND KEN NOLAN
1 Battery Park Plaza, 4th Floor
New York, New York 10004
(212) 422-1200
File No. 7261

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL SUMMARY ........................................................................................... 3

ARGUMENT ........................................................................................................... 5

    STANDARD FOR DISMISSAL PURSUANT TO RULE 12(B)(6) ........................ 5

POINT I .................................................................................................................. 7

    PLAINTIFFS' CLAIMS MUST BE DISMISSED
    BASED UPON LACK OF PRIVITY ...................................................................... 7

    A.    Defendants Did Not Represent the Survivor
        Plaintiff or Survivor Families at Any Point ................................................. 7

    B.    Representation of the Foreign Victim Family Plaintiffs ............................... 8

        1.    The U.S. Litigation ......................................................................... 9

        2.    The Kaprun Commission ................................................................ 12

POINT II ................................................................................................................ 14

    ALL ALLEGATIONS RELATING TO THE
    DEFENDANTS' PURPORTED HANDLING
    OF THE U.S. LITIGATION ARE TIME-BARRED ............................................... 14

POINT III .............................................................................................................. 17

    THE COMPLAINT FAILS TO SET FORTH
    FACTS SHOWING A "PLAUSIBLE" LINK
    BETWEEN TIIE ALLEGED DEFENDANTS'
    ERRORS AND HOW IT WOULD HAVE
    CHANGED THE OUTCOME .............................................................................. 17

    A.    The U.S. Litigation ................................................................................. 19

    B.    The Kaprun Commission ......................................................................... 21

POINT IV ............................................................................................................... 22

    PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED ....................................... 22

POINT V ................................................................................................................... 24

    PLAINTIFFS' CLAIMS FOR NEGLIGENCE,
    BREACH OF CONTRACT, BREACH OF
    FIDUCIARY DUTY, AND CONFLICT OF
    INTEREST ARE DUPLICATIVE OF THE
    CLAIMFOR LEGAL MALPRACTICE AND
    MUST BE DISMISSED .................................................................................... 24

POINT VI................................................................................................................. 24

    PLAINTIFFS HAVE FAILED TO SET FORTH A
    VALID CAUSE OF ACTION FOR BREACH
    OF FIDUCIARY DUTY..................................................................................... 24

CONCLUSION......................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

*Fed.R.Civ.P.* 12(b)(6) ................................................................................................ passim

*Fed.R.Civ.P.* 9(b) ........................................................................................... 22, 23

## STATE STATUTES

*N.Y. Civ. Prac. L. & R.* §214(6) ........................................................................... 1, 15

## FEDERAL CASES

*Alevizopoulos et at v. Comcost et. seq.,* 2002 U.S.Dist. LEXIS 11167 (D.D.N.Y. 2002) ...... 25

*Ashcroft v. Iabal,* 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...................................................... 5

*Barbosa v. Continuum Partners Health, Inc.,* 2010 U.S. Dist. Ct. LEXIS 21052
(S.D.N.Y. March 5, 2010) ................................................................................................ 5

*Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929
(2007) ............................................................................................................................. 5

*Bernstein v. State of New York,* 591 F.Supp.2d 448 (S.D.N.Y. 2008) ...................................... 6

*Brass v. American Film Technologies, Inc.* 987 F.2d 142 (2d Cir. 1993) ................................. 6

*Cantor Fitzgerald Inc., v. Lutnick,* 313 F.3d 704 (2d Cir. 2002) ........................................... 14

*Carruthers v. Flaum,* 388 F.Supp.2d 360 (S.D.N.Y. 2005) ..................................................... 6

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) ...................................................................... 14

*Hatfield v. Herz,* 109 F.Supp.2d 174 (S.D.N.Y. 2000) ........................................................... 17

*In re NYSE Specialists Sec. Litigation,* 503 F.3d 89 (2d Cir. 2007) ......................................... 5

*In re Ski Train Fire in Kaprun,* 220 F.R.D. 195 (S.D.N.Y. 2003) ................................. 3, 9, 19

*In re Ski Train Fire in Kaprun,* 224 F.R.D. 543 (S.D.N.Y. 2004) ......................................... 21

*In re Ski Train Fire In Kaprun, Austria,* 2005 U.S.Dist LEXIS 12701 (S.D.N.Y. 2005) ...... 16

*Kern et at, v. Siemens, et. at,* 393 F.3d 120 (2004), *cert. denied,*
125 S.Ct. 2272 (2005) ......................................................................................... 4, 9, 17

*Rescuecom Corp. v. Google Inc.,* 562 F.3d 123 (2d Cir. 2009) ............................................... 5

3910437.1

*Rombach v. Chang,* 355 F.3d 164 (2d Cir.. 2004).................................................................. 23

*Williams v. Navas,* 1996 U.S.App. LEXIS 28084 (2d Cir. 1996) .................................... 18, 19

*Yourish* V. *California Amplifier,* 191 F.3d 983 (9th Cir. 1999) ............................................. 23

*Zhadanov v. Gold & Wachtel,* 2000 U.S.Dist. LEXIS 14307 (S.D.N.Y. 2000)........................ 6

## STATE CASES

*Boyd v. Gering, Gross & Gross,* 226 A.D.2d 489,641 N.Y.S.2d 108 (2d Dept. 1996).......... 15

*Carey v. Campbell,* 93 A.D.2d 923, 462 N.Y.S.2d 331 (3d Dep't 1983) ...............................18

*Charos v. Esseks, Hefter & Angel,* 216 A.D.2d 511, 628 N.Y.S.2d 566 (2d Dept. 1995) ... 21

*Dweck Law Firm, LLP v. Mann,* 283 A.D.2d 292, 727 N.Y.S.2d 58
(1st Dep't 2001) ................................................................................................................ 18

*Glamm* v. *Allen,* 57 N.Y.2d 87; 453 N.Y.S.2d 674 (1982)...................................................... 15

*Greene v. Greene,* 47 N.Y.2d 447; 418 N.Y.S.2d 379 (1979) ................................................. 7

*Hunt v. Kolken,* 49 A.D.2d 747, 372 N.Y.S.2d 698 (2d Dep't) affd, 40 N.Y.2d 949,
390 N.Y.S.2d 413 (1976)................................................................................................... 18

*Kozmol v. Law Firm of Allen Rothenberg,* 241 A.D.2d 484, 660 N.Y.S.2d 63
(2d Dept. 1997)...................................................................................................................18

*Lavanant v. General Accident Insurance Co. of America,* 212 A.D.2d 450, 622 N.Y.S.2d
726, 727 (1st Dep't 1995).................................................................................................. 21

*McCoy v. Feinman,* 99 N.Y.2d 295, 755 N.Y.S.2d 693 (2002)............................................. 15

*Mecca v. Shang,* 258 A.D.2d 569, 685 N.Y.S.2d 458 (2d Dept. 1999)................................. 24

*Moran v. Hurst,* 32 A.D. 3d 909; 822 N.Y.S.2d 564 (2d Dept. 2006) ..................................... 7

*Prudential Insurance Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*
80 N.Y.2d 377, 590 N.Y.S.2d 831 (1992) .......................................................................... 7

*Rovello v. Klein,* 304 A.D.2d 638, 757 N.Y.S.D.2d 496 (2d Dept. 2003)................................ 7

*Senise v. Mackasek,* 227 A.D.2d 184, 642 N.Y.S.2d 241 (1st Dept. 1996)........................... 24

3910437.1

## PRELIMINARY STATEMENT

Defendants NAGEL RICE LLP, JAY RICE, ESQ., KOHN, SWIFT & GRAF, P.C., ROBERT A. SWIFT, ESQ., SPEISER KRAUSE, LLC AND KEN NOLAN, ESQ. (collectively the "Defendants") respectfully submit this motion to dismiss the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) as failing to state a claim upon which relief can be granted; for failing to meet the pleading requirements of Fed. R. Civ. P. 9(b); and as time-barred pursuant to N.Y. C.P.L.R. 214(6).

This legal malpractice action arises out of the litigation and Austrian-based mediation that followed the November 2000 ski train fire in Kaprun, Austria (the "Ski Train Fire"). In addition to a voluntary mediation (hereinafter the "Kaprun Commission"), multiple lawsuits were commenced in the United States by both U.S. and non-U.S. citizens. All of the U.S. lawsuits were ultimately consolidated in the United States District Court for the Southern District of New York in a multidistrict litigation (hereinafter the "U.S. Litigation"). The Plaintiffs in the instant action are some of the underlying plaintiffs. They are all non-U.S. citizens and hereinafter are referred to at times as the "Plaintiffs" or "Foreign Plaintiffs."

Plaintiffs' complaint asserts causes of action for legal malpractice, negligence, breach of contract, breach of fiduciary duty, conflict of interest, and fraud arising from the Defendants' role in the U.S. Litigation and the Kaprun Commission. Two of the primary allegations asserted by the Plaintiffs[1] in the case at bar are that the Defendants committed legal malpractice in the U.S. Litigation by, *inter alia*: (1) failing to seek certification of an opt-out class that would have included the Foreign Plaintiffs after the U.S. Court of Appeals de-certified an opt-in class in the

---

[1] Plaintiffs' allegations are deemed true solely for purposes of this motion. This motion should not be deemed an admission by the Defendants of any assertion by the Plaintiffs in the Complaint.

U.S. Litigation; and (2) allowing the District Court to dismiss claims against Siemens AG Österreich ("Siemens Austria") and other defendants, on jurisdictional grounds. With respect to the Kaprun Commission, while acknowledging that the Defendants did not represent the Foreign Plaintiffs before that tribunal, Plaintiffs contend that the Defendants breached purported duties owed to them by allegedly negotiating and allowing the Kaprun Commission to offer a settlement that provided a better recovery to the Defendants' American clients in that mediation.[2]

Plaintiffs' Complaint is ripe for dismissal on several grounds. First, with respect to the U.S. Litigation, many of the Plaintiffs were not opt-in members of the class and thus Defendants never represented them in any way. Second, with respect to the U.S. Litigation, all of the claims against the Defendants are time-barred. Third, even if the conclusory assertions of malpractice concerning the U.S. Litigation are accepted as true, Plaintiffs have failed to plead facts showing there is plausible "but for" causation link between any purported error and how that made the result of the U.S. Litigation any different. Fourth, successor counsel in the U.S. Litigation had the opportunity to remedy any alleged malpractice and failed to do so; thus as a matter of law Defendants could not have proximately caused any injury.

With respect to the Kaprun Commission, Plaintiffs readily concede that the Defendants did not represent them and this lack of privity warrants dismissal of the claims in the complaint. Plaintiffs' reliance on the bills/invoices submitted to several Foreign Plaintiffs is not, without more, enough to overcome this lack of privity. Likewise, Plaintiffs' contentions that the Defendants assisted their American clients to obtain what Plaintiffs contend were better settlements than they received, fails to articulate a sustainable claim for fraud and breach of fiduciary duty, let alone negligence, malpractice, breach of contract or conflict of interest.

---

[2] Despite the Plaintiffs' allegations to the contrary, the American Plaintiffs actually received less settlement monies than the Foreign Plaintiffs from the Kaprun mediation process.

3909929.1

## FACTUAL SUMMARY

In November 2000, a ski train fire in Kaprun, Austria resulted in the deaths of 155 people; only 12 survivors escaped. In early 2001, Edward D. Fagan and the Defendants filed a number of lawsuits arising out the Ski Train Fire. (Compl. ¶¶28-29). The cases were consolidated by a MDL Order and venued for case management purposes in the U.S. District Court for the Southern District of New York (the "U.S. Litigation"). (Compl. ¶33). The Defendants, and Edward Fagan, sought and obtained class certification of an opt-in victim class (i.e., families of those who died in the accident). (Compl. ¶38). There is no allegation in the Complaint that the Defendants ever filed for, or represented, any survivors of the disaster in connection with the U.S. Litigation.

In October 2003, the District Court granted class certification as an opt-in class, concluding that an opt-out class was not appropriate under the facts of the case and the Defendants were appointed as co-lead counsel. (Compl. ¶38). The District Court appointed Edward Fagan, a now disbarred attorney, as liaison counsel for the non-American class members – i.e., the Foreign Plaintiffs. *In re Ski Train Fire in Kaprun, Austria*, 220 F.R.D. 195, 199 (S.D.N.Y. 2003).

Just before this Court certified the opt-in class, the Kaprun Commission was established by the Republic of Austria in an attempt to mediate a potential global resolution of all claims asserted by the victims and survivors of the Ski Train Fire (Compl. ¶¶97, 99). Participation in the Kaprun Commission was purely voluntary, (Compl. ¶102), for both the Plaintiffs and any possible contributing parties (i.e., the underlying defendant corporations). Meetings were held, negotiations ensued, and discussions were held before the Commission, in an attempt to settle the

3

claims related to the Kaprun Disaster on behalf of both the American and non-American plaintiffs. (Compl. ¶¶ 97, 99).

In December 2004, the U.S. Court of Appeals for the Second Circuit reversed the District Court's ruling and decertified the class. *Kern et al., v. Siemens, et. al.*, 393 F.3d 120 (2004). The Defendants petitioned the United States Supreme Court for certiorari, but their petition was denied in 2005. *Kern et al., v. Siemens, et. al.*, 393 F.3d 120 (2004); *cert. denied*, 125 S.Ct. 2272 (2005). In or about June 2005, as a result of the Court of Appeals' decision, coupled with the fact that all of the American plaintiffs declined to act as the class representative, the Defendants had no viable basis to seek class certification as an opt-out class. As such, they wrote to the foreign class members, including certain of the Plaintiffs here, to advise them that the class was being decertified and that the "non-American families of persons who died in the Kaprun Ski Train Fire would not be included in the American litigation." Exhibit A.

Beginning in 2005 and continuing through early 2006, attorneys Edward Fagan, James Lowy and Robert Hantman all filed appearances before the District Court in the U.S. Litigation confirming that they represented the Foreign Plaintiffs in the U.S. Litigation. *See,* Exhibits B, C, D, E, F, G, I, J. Assuming for purposes of this motion that an attorney client relationship had existed between some of the Plaintiffs and the Defendants as a result of their being in the opt-in class before it was decertified, the Defendants did not represent any Foreign Plaintiffs from June 2005 forward in the U.S. Litigation. They did represent some American plaintiffs who subsequently settled their claims.

Several of the Foreign Plaintiffs, as part of a much larger group, continued to litigate their claims in the U.S. Litigation– under the guidance of Attorneys Fagan, Hantman and Lowy.

4

# ARGUMENT

## STANDARD FOR DISMISSAL PURSUANT TO RULE 12(B)(6)

As this Honorable Court has noted, "the Supreme Court's recent landmark decisions in *Bell Atlantic Corporation v. Twombly*[3] and *Ashcroft v. Iqbal*[4] arguably shifted pleading standards from 'simple notice pleading' to a 'more heightened form of pleading.'" *See Barbosa v. Continuum Partners Health, Inc.*, 2010 U.S. Dist. Ct. LEXIS 21052 (S.D.N.Y. March 5, 2010) (Scheindlin, J.). Thus, Plaintiffs' complaint must meet a standard of "plausibility" to survive a motion to dismiss. *Twombly, 550 U.S. at 564.* A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 S. Ct. at 1949* (quotation omitted). While plausibility "is not akin to a probability requirement," plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). Pleading facts that are "merely consistent with a defendant's liability" fails to "nudge[ ] [the plaintiff's] claims across the line from the conceivable to plausible." *Twombly, 550 U.S. at 570.*

In reviewing a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor. *Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009).* However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)* (quotation omitted).

"When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint . . . documents attached to

---

[3] *550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).*
[4] *129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009).*

5

3909929.1

the complaint as an exhibit or incorporated in it by reference . . . matters of which judicial notice may be taken . . . or documents either in plaintiff's possession or of which plaintiff[] had knowledge and relied in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Moreover, the Court "may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in [the] action." *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005).

This Complaint contains 227 paragraphs and is 37 pages long. This Honorable Court has consistently reminded litigants that "'the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.'" *Bernstein v. State of New York*, 591 F.Supp.2d 448, 459 (S.D.N.Y. 2008) (Scheindlin, J.)(citations omitted). The statement should be short because "'[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Id.*

If a pleading fails to comply with Rule 8(a), the court may strike redundant or immaterial portions or, if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," this Court may dismiss the complaint entirely. *Id.*

"As this is an action in diversity on a state law claim, state law--in particular New York law--governs the appropriate statute of limitations." *Zhadanov v. Gold & Wachtel*, 2000 U.S. Dist. LEXIS 14307 (S.D.N.Y. 2000).

6

## PLAINTIFFS' CLAIMS MUST BE DISMISSED
## BASED UPON LACK OF PRIVITY

### A.    Defendants Did Not Represent The Survivor Plaintiffs or Survivor Families At Any Point

It is well settled under New York law that a cause of action for legal malpractice must be dismissed as a matter of law if the pleadings fail to set forth facts establishing the existence of an attorney-client relationship. *Moran v. Hurst*, 32 A.D.3d 909; 822 N.Y.S.2d 564 (2d Dept. 2006). It is undisputed that attorneys owe a duty to their clients and that they must pursue their client's interests diligently and vigorously within the limits of the law, *Greene v. Greene*, 47 N.Y.2d 447; 418 N.Y.S.2d 379 (1979). An attorney, however, does not have a duty to act with due care to third parties with whom there is no privity or relationship so close as to approach privity. *Rovello v. Klein*, 304 A.D.2d 638; 757 N.Y.S.2d 496 (2d Dept. 2003); *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y. 2d 377; 590 N.Y.S.2d 831 (1992).

At no point during the U.S. Litigation or the Kaprun Commission did the Defendants represent the following Plaintiffs who survived the accident-- Hermann Geier, Birgit Gotz, Erwin Gotz, Marcus Hiltel, Manfred Miltel, Thomas Kraus, Eliane Mayerhofer, Roland Mayerhofer, or Agnes Wolf (the "Kaprun Survivor Plaintiffs" as defined in paragraph "3" of the Complaint). Similarly, the Defendants never represented Anni Geier, Bernd Geier, Markus Geier, Joachim Gotz, Matthias Gotz, Michael Gotz, Raphael Gotz, Bernd Hiltel, Lancelot Mayerhofter, Marlon Mayerhofer, Maria Mayerhofter-Karg, Christine Wolf, or Manfred Wolf who are the "Kaprun Survivor Family Plaintiffs" as defined in paragraph "4" of the Complaint.

As Plaintiffs readily admits, the Defendants represented the "Kaprun **Victim** Family Plaintiffs" (Compl. ¶26) (emphasis added) which they define as the "family members of some of

the persons killed in The Kaprun Disaster." (Compl. ¶2). Thus on the face of Plaintiffs' own complaint, they essentially admit that the Defendants never represented The Kaprun Survivor Plaintiffs or The Kaprun Survivor Family Plaintiffs. Yet these same plaintiffs seek to assert claims of malpractice against the Defendants.

Without any privity or attorney- client relationship, the claims asserted by Plaintiffs Hermann Geier, Birgit Gotz, Erwin Gotz, Marcus Hiltel, Manfred Miltel, Thomas Kraus, Eliane Mayerhofer, Roland Mayerhofer, Agnes Wolf ("Kaprun Survivor Plaintiffs") and Anni Geier, Bernd Geier, Markus Geier, Joachim Gotz, Matthias Gotz, Michael Gotz, Raphael Gotz, Bernd Hiltel, Lancelot Mayerhofter, Marlon Mayerhofer, Maria Mayerhofter-Karg, Christine Wolf, or Manfred Wolf ("Kaprun Survivor Family Plaintiffs") must be dismissed as a matter of law.

## B.     Representation of the Foreign Victim Family Plaintiffs

With regard to the remaining Foreign Plaintiffs – Bridget Decker, Jutta Decker and Peter Decker; Eri Deguchi, Nobuko Deguchi, Tomonari Deguchi and Yuko Deguchi; Anneliese Ferstl and Franz Ferstl Jr.; Kosuke Mitsumoto, Masatoshi Mitsumoto and Nanae Mitsumoto; Hitoshi Narahara and Junko Narahara; Martin Niederberger and Renate Niederberger; Etsuko Onodera, Hiroyasu Onodera and Nobuo Onodera; Asako Oyama, Chie Oyama and Mineo Oyama; Kayo Sakakibara, Shizuno Sakakibara, Takeshi Sakakibara, and Tomoyoski Sakakibara; Hideko Saze, Keiko Saze, Motoko Saze and Soju Saze; Sidonjia Scharwitzl; Joop Stadman; and Hirokau Wakui, Hiroko Wakui, Kiyoe Wakui, Masako Wakui, and Yasushi Wakui, Judith Wiendl and Monika Wiendl – these individuals are defined in paragraph "2" of the Complaint as the "Kaprun Victim Family Plaintiffs." None of these Plaintiffs are families of the American victims who died in the fire and whom were represented by the Defendants throughout the U.S. Litigation. Further, as discussed below, these Foreign Plaintiffs were never clients of the Defendants before

8

the Kaprun Commission, nor were they represented by Defendants in the U.S. Litigation after decertification of the class.

      *1.*    *The U.S. Litigation*

For purposes of this motion, the Defendants do not argue the issue of whether they owed the Kaprun Victim Family Plaintiffs a duty when they were members of the putative class, defined as including "'all heirs, beneficiaries and personal representatives' of all individuals who died in the fire 'who consent to inclusion'." *In re Ski Train Fire in Kaprun, Austria*, 220 F.R.D. 195, 199 (S.D.N.Y. 2003).[5]

Defendants' purported representation of those Foreign Plaintiffs terminated, however, when the U.S. Court of Appeals decertified the class and then the Supreme Court declined to review the case. *See Kern v. Siemens Corporation*, 393 F.3d 120, 129 (2004), *cert. denied*, 544 U.S. 1034 (2005). In 2005, Defendants wrote to all of the Foreign Plaintiffs that had opted in before the District Court, advising them of their non-class status and that Defendants would not be pursuing the U.S. Litigation for them. Exhibit A.

Publicly filed documents from the U.S. Litigation confirm that no later than November 2005, Edward Fagan and/or two other attorneys, Robert J. Hantman and James Lowy, were the exclusive counsel for the Foreign Plaintiffs in the U.S. from that point of time going forward. By his own admissions, James Lowy, Esq. began representing the Foreign Plaintiffs as early as 2005. Exhibit B, ¶ 16. On November 2, 2005, a hearing was held before the District Court during which time the Foreign Plaintiffs, represented solely by Fagan, moved to intervene in

---

[5] The District Court, in certifying the class, specifically appointed Mr. Fagan as liaison counsel for the non-American class members. *Id*. at 204. Curiously, Plaintiffs have not named Mr. Fagan as a defendant in this lawsuit.

3909929.1

already pending U.S. lawsuits commenced by Mr. Fagan. At that hearing, Fagan made the following statement, confirming his exclusive representation of the Foreign Plaintiffs:

> Court: Mr. Fagan, is it correct that there's no one else representing the foreign plaintiffs on that motion but you? Just, please, yes or no.
>
> Mr. Fagan: Yes, Your Honor.
>
>         \*       \*       \*
>
> Court: So they're -- all your clients are foreigners?
>
> Mr. Fagan: Yes, Your Honor.
>
> Exhibit C.

Thereafter, by correspondence dated April 20, 2006, Edward Fagan wrote to the District Court advising that he was representing the Foreign Plaintiffs in three pending actions -- the *Batori*, *Geier* and *Mitsumoto* actions[6] (the "Individual Actions"). Exhibit D. On June 15, 2006, Robert J. Hantman also advised the District Court in writing that "[o]ur firm is co-counsel **for the non-U.S. plaintiffs** in the *Batori/Blaimauer, Geier* and *Mitsumoto* matters." Exhibit E.

On May 25, 2007, Plaintiff Bernd Geier stated, in an affidavit submitted to this Court, the following:

> On my father's behalf and with other Kaprun victims and/or survivors, and at different times through the last year, I have met with Mr. James Lowy and Mr. Robert Hantman and we all know that they are also working in the cases with Mr. Fagan and with our knowledge and consent. **Messrs. Hantman and Lowy's involvement was formally introduced to us at a meeting in Salzburg in July 2006**, to which Mr. Fagan invited all his clients and where the majority of them or their representatives were

---

[6] With the exception of Judith Wiendl and Monika Wiendl, Hirokau Waku and Kivoe Wakui, all of the Foreign Plaintiffs who are parties to this action were also parties to one or more of the Batori/Blaimauer, Geier and Mitsumoto matters. *SeeMitsumoto et al v. Republic of Austria et al,* 06-cv6811; *Batori et al v. Omniglow et al,* 03-cv-8960; *Geier et al v. Omniglow et al,* 03-cv-8961

present. Based on conversations I had with most of the victims and survivors from Vilsek, I know that they have full confidence in Mr. Fagan, with his US team which includes Mr. James Lowy as to the Florida action and Mr. Robert Hantman in the NY cases…"

(Exhibit F, ¶ 19).

In a related proceeding, involving a claim of malpractice by Foreign Plaintiff Bernd Greier against Mr. Lowy, counsel for Mr. Lowy submitted a sworn declaration to the District Court confirming that:

"Fagan, before being disqualified was lead counsel for the non-U.S. plaintiffs. **The U.S. Citizens were represented by Jay J. Rice, Esq., the firm of Nagel Rice, LLC, Robert A. Swift, Esq., the firm of Kohn Swift & Graf, the firm of Speir Krause, LLC, and Ken Nolan, Esq.,** and a German lawyer, Michael Witti, Esq. was associated with the lawyers for the American plaintiffs. Mr. Lowy was one of Fagan's co-counsel. Mr. Hantman also became a co-counsel in 2006."

Declaration of Michael R. Perle, Esq, dated January 16, 2008, ¶ 3, submitted in *Edward D. Fagan, Esq., Dr. Bernd Geier and Dr. Gerhard Podovsovnik, vs. James J. Lowy, Esq., International Law Group, LLC, Florida Law Group, LLC, Michael R. Perle, Esq., and Michael R. Perle, P.C.,* case no. 07-CV-10293 (LAK) (the "Lowy Malpractice Complaint"). Exhibit G.

Thus, any attorney-client relationship that may have existed between certain of the Foreign Plaintiffs and the Defendants in the American Litigation ended with decertification of the class in the MDL Action in 2005. Even if the Plaintiffs could make an argument that the representation somehow continued beyond that point, publicly-filed documents and Plaintiffs' own admissions confirm they understood that any attorney-client relationship relating to any U.S. litigation ended long before June 2006 as other attorneys were representing them. From that point forward, the Defendants were not in privity with the Foreign Plaintiffs and, thus, owed no duty to the Foreign Plaintiffs for the American Litigation.

11

Plaintiffs allege that the Defendants committed malpractice, breach of fiduciary duty, negligence, breach of contract and fraud by obtaining settlements before the Kaprun Commission for their American clients that provided more monies to the U.S. victim families than the Foreign Plaintiffs. Plaintiffs contend that the defendants concealed and withheld evidence and facts; misrepresented settlement and release documents; failed to provide them with accurate accountings of payments made to third parties which reduced available settlement monies; failed to establish proper procedures by which individuals could rescind participation in the Kaprun Commission and reject potential "settlement payments"; and failing to protect these plaintiffs against fraud by the Commission which rendered the settlement and release documents invalid. (Compl. ¶ 104). Other than apparently being displeased with the legal advice that they received from their own counsel in Austria, it is hard to discern what Plaintiffs' actual claim is against the Defendants for the post- class decertification time period.[7]

Nonetheless, without addressing the speculative and conspiratorial nature of these claims (claims that are anchored upon their assertion of corruption in the Austrian government in a mediation process that was voluntary– Compl. ¶103), Plaintiffs' claims all fail. In addition to there being a lack of privity between the Defendants and the Plaintiffs before the Kaprun Commission, there is not one allegation in the Complaint that the Foreign Plaintiffs relied, in any way, on the Defendants, in their decisions to accept settlement monies from the Kaprun Commission. To the extent that Plaintiffs have asserted that the Defendants breached purported

---

[7] The record will also ultimately show that despite the allegation in the Complaint, the American victims got less than the Foreign Plaintiffs from the Kaprun Commission, not surprising when one considers that the American clients were able to settle and make recovery against certain companies in the U.S. Litigation.

12

duties owed to the Foreign Plaintiffs during the Kaprun Commission in Austria, (Compl. 116-122), these claims are thus barred by a lack of privity.

Plaintiffs readily admit in their complaint that the Defendants did not represent them before the Kaprun Commission:

> "With regard to The Kaprun Commission, Defendants treated the claims, rights and interests of The Kaprun Victim Family Plaintiffs, The Kaprun Survivor Plaintiffs, The Kaprun Survivor Plaintiffs, The Kaprun Survivor Family Plaintiffs **and Defendants' clients – the US Kaprun victim families**, as well as other Kaprun victims, survivors, and/or claimants, in an un-fair, inequitable and discriminatory way."

(Compl., ¶150) (emphasis added). This allegation should end the analysis of claims asserted in the Complaint concerning the Kaprun Commission.

It appears, however, that the Plaintiffs are attempting to create the notion of some duty owed to them by the Defendants in the Kaprun Commission based upon an invoice generated by the Defendants and sent to certain Foreign Plaintiffs. Compl ¶ 94 n 8. There is no dispute that certain Foreign Plaintiffs received invoices from the Defendants after the conclusion of the Kaprun Commission[8] – Joop Stadman, Brigitte and Peter Decker, Anneliese Ferstl, Franz Ferstl, Joseph Mayr, Eliane Mayerhofter, Roland Mayerhofer, Maira Mayerhofter, Martin Niederberger, Renate Niederberger, and Sidonijia Scharwitzl. Exhibit H. These invoices did not create a duty to these Foreign Plaintiffs and more importantly, were rejected by the Foreign Plaintiffs. By letter dated May 6, 2008, Dr. Jurgen Hinterwirth, an attorney from Salzburg Austria, rejected invoices sent to Bridget Decker, Peter Decker, Josef Mayr, Martin Niederberger, and Renate Niederberger, stating the following:

> "The sending of invoices to all my clients for ostensible costs and services appears more than astonishing for them and me. **You, or**

---

[8] Only 8 invoices, in total, were sent by the Defendants.

**any other American lawyers have never been empowered to represent my clients in any kind of procedure in Austria...**"

Exhibit I (emphasis added).

Moreover, during the course of the U.S. Litigation, the Foreign Plaintiffs repeatedly made submissions to the District Court containing admissions that the Defendants did not represent them. *See e.g.*, Declaration of Austrian lawyer Michael Witti, dated July 2006, representing plaintiff Stadman, one of the Foreign Plaintiffs herein. (Exhibit J, ¶7); Affidavit of Dr. Ivo Greiter, dated April 20, 2006, an Austrian lawyer who admittedly represented families of the 10 Japanese victims of the disaster (Exhibit K ¶¶ 4, 5, 9, and 11); Declaration of Dr. Ivo Greiter, dated May 21, 2007, (Exhibit L, ¶¶1-2, 9-10); Declaration of Dr. Herwig Hasslacher, an attorney who "leads the group of Kaprun victims from the Carinthia Region of Austria and who also represents the Slovenian victims families," and was counsel for Sidonija Scharwitzl. (Exhibit M ¶¶1, 4, 7.)

Thus the lack of privity between the Foreign Plaintiffs and the Defendants warrants dismissal of the claims in the Complaint relating to the Kaprun Commission.

## POINT II

## ALL ALLEGATIONS RELATING TO THE DEFENDANTS' PURPORTED HANDLING OF THE U.S. LITIGATION ARE TIME-BARRED

A federal court hearing a case pursuant to diversity jurisdiction generally must apply the substantive law of the state in which it sits. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80, (1938); *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002). The statute of limitations presents an issue of substantive law, and thus is governed by state law. *Cantor Fitzgerald*, 313 F.3d at 709.

14

New York Civil Practice Law and Rules §214(6) provides for a three-year statute of limitations for malpractice claims against attorneys. *See McCoy v. Feinman*, 99 N.Y.2d. 295, 755 N.Y.S.2d 693 (2002). The statute reads:

> "The following actions must be commenced within three years:
>
>        *        *        *
>
> (6) an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort . . . ."

*N.Y. Civ. Prac. L. & R.* §214(6).

It is well-settled that the period of limitations on a legal malpractice action begins to run when the malpractice is committed. *See Boyd v. Gering, Gross & Gross*, 226 A.D.2d 489; 641 N.Y.S.2d 108 (2d Dep't 1996) (citing *Glamm v. Allen*, 57 N.Y.2d 87; 453 N.Y.S.2d 674 (1982)). As the Court of Appeals stated in *McCoy v. Feinman*, *supra*, in most cases, the accrual of the statute of limitations for a legal malpractice claim is measured from the time "an actionable injury occurs:"

> An action to recover damages arising from an attorney's malpractice must be commenced within three years from accrual (*see* CPLR 214 [6]). A legal malpractice claim accrues "when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court" . . . In most cases, this accrual time is measured from the day an actionable injury occurs, "even if the aggrieved party is then ignorant of the wrong or injury" . . . "What is important is when the malpractice was committed, not when the client discovered it."

*Id.* at 301. Thus, New York law focuses on when the actual act of wrongdoing occurred -- not when it was "discovered" by the client. *Id.* In other words, there is no discovery rule under New York law to toll the running of the statute of limitations.

15

With respect to the U.S. Litigation, the relevant time period by Plaintiffs' own admission is 2001 through 2005/2006. *See*, Declaration of Joy Hochstadt, Esq., in Support of Plaintiffs' Notice of Motion for *Pro Hac Vice Admission of James F. Lowy Esq. and for Miscellaneous Other Relief (Reply Declaration)*, dated February 4, 2010 (D.E. 20). During this time period, Plaintiffs allege errors in the handling of the opt-in class efforts and the handling of motions to dismiss filed by the Defendants in the U.S. Litigation. The following explains how those purported errors are time barred.

*Dismissal of Siemens Austria* - Plaintiffs challenge the Defendants' handling of the dismissal of Siemens Austria in 2002 for lack of jurisdiction. Complaint¶ 34, 46-55. The District Court later denied the Defendants' motion seeking, on behalf of the Plaintiffs, to sever the claims against Siemens Austria and to file an amended complaint showing personal jurisdiction over Siemens Austria in California. 224 F.R.D. 543 (May 5, 2004). Thereafter, by decision dated June 27, 2005, a motion for certification of the issue to the Second Circuit, pursuant to FRCP 54(b), was denied. *In re Ski Train Fire In Kaprun, Austria*, 2005 U.S. Dist. LEXIS 12701 (S.D.N.Y. 2005). Thus, any claim arising out of the failure to take further action to reinstate Siemens Austria as a defendant, should have been commenced (at the latest) within three years of June 27, 2005. As this complaint was not filed until December 2009, this claim is time-barred.

*Dismissal of Other Defendants* - Plaintiffs further allege that the Defendants failed to properly challenge the District Court's granting of dismissal motions of various "core" defendants, such as Verbund AHP and Beton Monierbau. *See*, Declaration of Joy Hochstadt, Esq., in Support of Plaintiffs' Notice of Motion for *Pro Hac Vice Admission of James F. Lowy Esq. and for Miscellaneous Other Relief (Reply Declaration)*, at ¶18; Complaint ¶¶131-132). The

16

case against Verbund AHP was dismissed on April 4, 2003 (01 cv 7242) and thus any claim for failure to seek reversal of this decision had to be commenced by April 4, 2006. Likewise, the case against Beton Monierbau was dismissed on November 23, 2004 (04 cv 1402). Any claim relative to that dismissal must have been commenced on or before November 23, 2007.

*Re-Certification of an Opt-Out Class to Include the Foreign Plaintiffs* - One of Plaintiffs' primary allegations is that the Defendants failed to seek certification of an opt-out class after the opt-in class was de-certified by the U.S. Court of Appeals in 2004. (Compl. ¶136). The petition for certiorari was denied in May 2005, (*Kern et al., v. Siemens, et. al.*, 393 F.3d 120 (2004), *cert. denied,* 125 S.Ct. 2272 (2005)). As the acts of purported malpractice ended in May 2005 any claim against the Defendants for failing to act should have been commenced by May 2008. Alternatively, once Fagan, Lowy and Hantman began filing appearances for these Foreign Plaintiffs in late 2005, the statute of limitations would begin to run at that time as Defendants lacked authority to act for parties represented by other counsel. Thus, the Complaint filed on December 1, 2009 would be untimely.

In sum, any purported errors by Defendants in the handling of the U.S. Litigation while certain Plaintiffs were part of the putative class are time barred.

## POINT III

### THE COMPLAINT FAILS TO SET FORTH FACTS SHOWING A "PLAUSIBLE" LINK BETWEEN THE ALLEGED DEFENDANTS' ERRORS AND HOW IT WOULD HAVE CHANGED THE OUTCOME

To properly plead a claim for malpractice, a plaintiff must allege: (1) that the attorney had a duty to use such skill, prudence, and diligence as other members of this profession commonly possess and exercise, (2) a breach of that duty, (3) a proximate causal connection between the negligent conduct and the resulting injury, (4) actual loss or damage resulting from

the attorney's malpractice. *Hatfield v. Herz*, 109 F. Supp. 2d 174 (S.D.N.Y. 2000). In a legal malpractice action:

> "the client must plead specific factual allegations establishing that but for counsel's deficient representation, there would have been a more favorable outcome to the underlying matter."

*Dweck Law Firm, LLP v. Mann*, 283 A.D.2d 292, 727 N.Y.S.2d 58, 59-60 (1st Dep't 2001).

Additionally, it is well established that selection of one among several reasonable courses of action does not constitute malpractice. *Williams v. Havas*, 1996 U.S. App. LEXIS 28084, *6 (2d. Cir. 1996). ("Lawyers 'are not guarantors of favorable outcome in litigation,' and their reasonable strategic decisions made in the course of representing a client do not amount to malpractice").

Moreover, where successor counsel had sufficient time to adequately protect a plaintiff's rights, the predecessor lawyer's alleged negligence cannot as a matter of law proximately have caused plaintiff any injury. *See e.g. Kozmol v. Law Firm of Allen Rothenberg*, 241 A.D.2d 484, 660 N.Y.S.2d 63 (2d Dep't 1997) (subsequent counsel had a sufficient opportunity to protect the plaintiff's rights when they could have properly re-served an intended defendant); *Carey v. Campbell*, 93 A.D.2d 923, 462 N.Y.S.2d 331 (3d Dep't 1983) *quoting*, *Hunt v. Kolken*, 49 A.D.2d 747, 372 N.Y.S.2d 698 (2d Dep't) *aff'd*, 40 N.Y.2d 949, 390 N.Y.S.2d 413 (1976) (It is axiomatic that "[a]n attorney who is discharged by his client 'cannot be liable for subsequent events'").

Plaintiffs' complaint appears to allege two general categories of malpractice -- alleged errors in the handling of the U.S. Litigation and an amorphous claim regarding the Defendants' involvement in the Kaprun Commission (including assertions that the Defendants failed to

discover that the Austrian government and the Kaprun Commission were part of a cover-up and that the Defendants got better settlements for their American clients).

## A.    The U.S. Litigation

As discussed above, Plaintiffs allege that the Defendants were negligent for proceeding with an "opt-in" class (Compl. ¶60). Incredibly, Plaintiffs make this argument despite the fact that the District Court agreed with the Defendants' recommended litigation strategy. *In re Ski Train Fire in Kaprun, Austria*, 220 F.R.D. 195, 199 (S.D.N.Y. 2003). As the selection of "opt-in" class was a reasonable litigation strategy, there is no viable claim against the Defendants. *See Williams, supra.*

Plaintiffs then focus on a claim that the Defendants were negligent because, after the Second Circuit decertified the class, the Defendants failed to move to recertify an opt-out class that could have included the Foreign Plaintiffs (Compl. ¶¶135, 136). Plaintiffs, however, fail to plead facts showing the motion would have been granted.

More importantly, Plaintiffs completely ignore the fact that successor counsel, Mr. Fagan, Mr. Hantman, and Mr. Lowy, had every opportunity – starting in 2005 – to seek to certify a new opt-out class to include the Foreign Plaintiffs. Successor counsel elected not to do so and instead chose to file independent lawsuits on behalf of the Foreign Plaintiffs against multiple corporate defendants. In fact, on May 25, 2006, Mr. Fagan along with Mr. Hantman and Mr. Lowy appeared before the District Court and requested that the Court set July 13, 2006 as the date by which any and all persons and/or victim families who were represented in, by, or were former members of the Opt-In Class, could join or have their claims represented in then-pending actions commenced by Fagan. Exhibit N. By Order dated May 31, 2006, their request was granted by the District Court, directing as follows:

> Mr. Fagan shall take such steps as he deems reasonable and necessary to provide notice (directly or through their Austrian or German Lawyers or other authorized representatives) to those persons who were former members of the Opt-In Class of the July 13, 2006 deadline within which to join and have their claims (including those which were part of the former Opt-In Class) included in the ongoing Individual Claims entitled *Batori/Blaimauer, Geier and/or Mitsumoto*. In the event such Affidavits are not received by the Court on July 13, 2006, such persons claims will be precluded.

(Exhibit N).

To the extent that the Plaintiffs now claim that they were ultimately precluded from proceeding with an opt-out class, it was at the hands of successor counsel. As successor counsel to the Defendants could have remedied any alleged negligence, Plaintiffs are unable to establish as a matter of law that the Defendants were the proximate cause of their damages.

Plaintiffs also claim that the Defendants were negligent in failing to maintain a viable claim against Siemens Oesterreich AG ("Siemens Austria"). (Compl., ¶¶46-55). Again other than making blanket assertions that the Defendants failed to keep the case against Siemens Austria viable, Plaintiff's complaint offers no factual basis as to how they could have successfully asserted jurisdiction over Siemens Austria in the U.S. or, more importantly, the factual basis upon which they ultimately would have prevailed against Siemens Austria.

The District Court dismissed the claims of all plaintiffs (not just the Foreign Plaintiffs) against Siemens Austria in 2002 for lack of personal jurisdiction, relying heavily on affidavits and evidence submitted by Siemens Austria establishing that it did not conduct business in New York. *In re Ski Train Fire in Kaprun*, 230 F.Supp.2d 403 (S.D.N.Y. 2002). The Court later denied a motion seeking to sever the claims against Siemens Austria and to file an amended complaint showing personal jurisdiction existed over Siemens Austria in California. *In re Ski Train Fire*, 224 F.R.D. 543 (S.D.N.Y. 2004). As part of that decision, the District Court

20

recognized that allowing any case to proceed against Siemens Austria in California would have been inappropriate because there was only "weak evidence that Siemens Austria is actually subject to personal jurisdiction in Northern California." *In re Ski Train Fire*, 224 F.R.D. 543, 549 (S.D.N.Y. 2004). Thus, Plaintiffs' blanket contention that they could have secured jurisdiction over Siemens Austria but for the defendants' alleged acts does not set forth a "plausible" claim.

It is pure conjecture to conclude that the action would have been successfully transferred to California, let alone that the claim would have succeeded on its merits. Speculative claims, without any support in the law or fact, are insufficient as a matter of law to support a legal malpractice action. *Charos v. Esseks*, Hefter & Angel, 216 A.D.2d 511, 628 N.Y.S.2d 566 (2d Dep't 1995); *Lavanant v. General Accident Ins. Co. of America*, 212 A.D.2d 450, 622 N.Y.S.2d 726, 727 (1st Dep't 1995).

Lastly, Plaintiffs make conclusory assertions that the Defendants should have defeated unidentified motions to dismiss filed by several underlying defendants in the U.S. Litigation and should not have voluntarily dismissed claims against other unidentified defendants. (Compl, ¶¶56-59). Plaintiffs offer no factual or legal basis for any of these assertions, as and such, these claims must be dismissed as well. The Defendants sued the proper parties, made the appropriate motions, fully briefed the jurisdictional issue and lost. The likelihood of success on any further actions that could have been taken by the Defendants is pure conjecture. Certainly, there are no facts alleged in this Complaint to show how a different outcome would have been achieved.

## B. The Kaprun Commission

Plaintiffs contend that the Defendants somehow breached an ambiguous duty to the Foreign Plaintiffs during negotiations before the Kaprun Commission because the Defendants allegedly did a better job for their clients than their counterparts did for the Plaintiffs. (Compl ¶¶

21

116-120). The Plaintiffs further allege that the Defendants failed to discover that the Austrian government was corrupt, and instead engaged in some sort of cover-up of the Commission's unfair and inequitable treatment to the Foreign Plaintiffs. (Compl ¶¶ 120).

First, as discussed in Point I, *supra*, Plaintiffs' claims are barred by the lack of privity between the Foreign Plaintiffs and the Defendants before the Kaprun Commission. Plaintiffs' conclusory assertion that it was the Defendants' fault that the Kaprun Commission offered the Foreign Plaintiffs less money than they should have is not a cognizable claim. As intimated in the Complaint and as detailed above, Plaintiffs were represented by their own counsel before the Kaprun Commission and their wholesale allegations of a massive fraud involving the Defendants, the Commission, and the Austrian government are insufficient to sustain a "plausible" cause of action against Defendants. If the Commission gave greater settlements to the American Plaintiffs, the Defendants owed no duty whatsoever to make the American plaintiffs take less (assuming Plaintiffs' allegations of a conspiracy to reduce the amounts paid to the Foreign Plaintiffs are even true).

Second, as Plaintiffs concede, the proceedings before the Kaprun Commission were based entirely on VOLUNTARY participation. (Compl, ¶102). If the Plaintiffs were not happy with the settlement they were offered and/or received, they could have walked away and pursued whatever remedies they felt appropriate.

## POINT IV
### PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED

Plaintiffs' cause of action for fraud and misrepresentation relating to the Kaprun Commission is also ripe for dismissal pursuant to Federal Rules of Civil Procedure Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud and mistake, the circumstances constituting

fraud or mistake shall be plead with particularity." *Fed.R.Civ.P.* 9(b). To satisfy Rule 9(b) in this Circuit, a plaintiff must "specify the statements that the plaintiff contends were fraudulent" and "explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2nd Cir. 2004) (quotation marks and citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, 'the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.'" *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999)(internal citations omitted); Plaintiffs have not met any of these requirements.

Plaintiffs' fraud claim relies on conclusory assertions of a conspiracy by the Austrian government during the Kaprun Commission to somehow assist U.S. citizens to the detriment of the Foreign Plaintiffs. It also alleges the Defendants' purported failure to discover/disclose the fraud in this voluntary mediation. Plaintiffs rely on conclusory statements like "[d]efendants representations that the Kaprun Commission, the settlement negotiations, purported settlement documents and releases and calculations of damages would be fair, equitable and non-discriminatory against any Kaprun victim family with similar claims regardless of nationality were false." (Complaint ¶ 182). These conclusory assertions of fraud are insufficient to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).

Nowhere in Plaintiffs' 227 paragraph complaint do they state with any specificity what representations were made, by whom, and to whom. Moreover, they fail to state any facts establishing how any purported representation was false. Without such factual specificity, Plaintiffs' fraud claim fails as a matter of law.

23

## POINT V

## PLAINTIFFS' CLAIMS FOR NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, AND CONFLICT OF INTEREST ARE DUPLICATIVE OF THE CLAIM FOR LEGAL MALPRACTICE AND MUST BE DISMISSED

New York Courts have repeatedly dismissed causes of action for negligence, breach of fiduciary duty, breach of contract and the like when they arise from the same operative facts as the claim of professional malpractice. *See Senise v. Mackasek*, 227 A.D.2d 184, 642 N.Y.S.2d 241 (1st Dept. 1996); *Mecca v. Shang*, 258 A.D.2d 569, 685 N.Y.S.2d 458 (2d Dep't 1999).

All of the assertions in the causes of action in the complaint arise from the same operative facts – Plaintiffs' belief that the Defendants committed malpractice in the course of the U.S. Litigation and the Kaprun Commission. Plaintiffs' first cause of action, which is entitled "negligence" (i.e., malpractice), sets forth all of the claims relating to the handling of the U.S. Litigation and the Kaprun Commission (Compl., ¶¶123-153). The claims for "breach of actual or implied contract", (Compl. ¶¶ 154-159), "breach of fiduciary duty" (Compl., ¶¶160-177), "fraud and misrepresentation" (Compl., ¶¶178-189), "undisclosed conflicts of interest" (Compl., ¶¶190-215), and "malpractice" (Compl., ¶¶216- 220) all are based on the same facts and allegations surrounding the purported errors in handling the U.S. Litigation and the purported discrimination by the Defendants against the Foreign Plaintiffs in the Kaprun Commission. These claims are duplicative of the legal malpractice and as a matter of law, and must be dismissed. *Id.*

## POINT VI

## PLAINTIFFS HAVE FAILED TO SET FORTH A VALID CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

Even if the fiduciary breach claim is not duplicative of the asserted malpractice, Plaintiffs' complaint fails to state an independent cause of action for breach of fiduciary duty. In

24

order to state a cause of action for breach of fiduciary duty, a complaint must allege: (1) the existence of a fiduciary duty between the parties; (2) the defendant's breach of that duty; and (3) the breach was the proximate cause of the damages. *See Alevizopoulos et al. v. Comcost et. seq.,* 2002 U.S. Dist. LEXIS 11167 (S.D.N.Y. 2002).

As detailed above, Plaintiffs' complaint fails to establish the existence of any duty owed by the plaintiffs to any of the Survivor Plaintiffs. Moreover, there is no duty alleged with respect to the Kaprun Commission. Finally, as discussed with respect to the malpractice assertions, Plaintiffs have failed to even plead a breach of any duty, to the extent one even existed with respect to the handling of the U.S. Litigation.

## CONCLUSION

WHEREFORE, for reasons stated herein Defendants NAGEL RICE LLP, JAY RICE, ESQ., KOHN, SWIFT & GRAF, P.C., ROBERT A. SWIFT, ESQ., SPEISER KRAUSE, LLC AND KEN NOLAN, ESQ., request that this Court dismiss the Plaintiffs' Complaint, with prejudice, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), and N.Y. Civ. Prac. L. & R. §214(6), and for such other and further relief as it deems just and equitable.

3909929.1

Dated:    New York, New York
             March 15, 2010

Yours etc.,
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____

Brett A. Scher, Esq.
Lauren J. Rocklin, Esq.
WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
*Attorneys for Defendants*
NAGEL RICE LLP, JAY RICE, ESQ., KOHN,
SWIFT & GRAF, P.C. AND ROBERT A. SWIFT,
ESQ.,
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File No. 01224.00685/10330.00101

By: _____

Barry Jacobs, Esq.
ABRAMS, GORELICK, FRIEDMAN &
JACOBSON, P.C.
*Attorneys for Defendants*
Speiser Krause LLC and Ken Nolan
1 Battery Park Plaza, 4th Floor
New York, New York 10004
(212) 422-1200
File No. 7261

26

Dated:        New York, New York
              March 15, 2010

                        Yours etc.,
            WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


              By:    _____

                     Brett A. Scher, Esq.
                     Lauren J. Rocklin, Esq.
                     WILSON, ELSER, MOSKOWITZ, EDELMAN &
                     DICKER LLP
                     *Attorneys for Defendants*
                     NAGEL RICE LLP, JAY RICE, ESQ., KOHN,
                     SWIFT & GRAF, P.C. AND ROBERT A. SWIFT,
                     ESQ.,
                     150 East 42nd Street
                     New York, New York 10017-5639
                     (212) 490-3000
                     File No. 01224.00685/10330.00101


              By:    _____

                     Barry Jacobs, Esq.
                     ABRAMS, GORELICK, FRIEDMAN &
                     JACOBSON, P.C.
                     *Attorneys for Defendants*
                     Speiser Krause LLC and Ken Nolan
                     1 Battery Park Plaza, 4th Floor
                     New York, New York 10004
                     (212) 422-1200
                     File No. 7261

3909929 1