UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

BRIDGITTE DECKER, *et al.*,

    **Plaintiffs,**

  **- against -**

NAGEL RICE LLC, JAY RICE, ESQ.,
SPEISER KRAUSE LLC, KEN NOLAN,
ESQ., KOHN SWIFT & GRAF LLC, and
ROBERT SWIFT ESQ.,

    **Defendants.**

------------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 9878 (SAS)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/22/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

On November 2000, a ski train fire in Kaprun, Austria killed 155

individuals and left twelve survivors.  In addition to a mediation that took place in

Austria, American and foreign survivors and/or relatives of those who died in the

fire brought multiple lawsuits in federal court against numerous defendants (the "*In

re Ski Train* Litigation").  Plaintiffs in this action – who were the foreign plaintiffs

in the *In re Ski Train* Litigation – now bring a legal malpractice action against

certain counsel in that action.  In addition to being represented by Joy Hochstadt,

plaintiffs seek to have James Lowy represent them and move for his admission to

this Court *pro hac vice*. For the reasons that follow, plaintiffs' motion is denied.

## II.   BACKGROUND[1]

In January 2001, four of the six defendants to this action – Nagel Rice

LLC ("Nagel"), Jay J. Rice, Kohn Swift & Graf LLC ("Kohn"), and Robert Swift –

filed a class action in the *In re Ski Train* Litigation.[2]   The class action included

American and foreign plaintiffs.[3]   In 2002, the Judicial Panel on Multidistrict

Litigation assigned all related actions to this Court for coordinated or consolidated

pretrial proceedings.[4]   In September 2002, the complaint that Nagel, Rice, Kohn,

and Swift filed against one of the defendants – Siemens AG Österrech ("Siemens

AG") – was dismissed for lack of personal jurisdiction.[5]   In January 2003, Nagel,

---

[1]      The facts herein are undisputed and drawn from the Declarations of
Joy Hochstadt ("Hochstadt Decl."); James F. Lowy ("Lowy Decl."); James F.
Lowy in Further Support of Motion for *Pro Hac Vice* Admission ("Lowy Reply
Decl."); Mitsumoto Family, plaintiffs, in Support of Motion for *Pro Hac Vice*
Admission of James F. Lowy Esq. and for Other Relief ("Mitsumoto Decl."); and
the exhibits attached to the Declaration of Brett A. Scher, defendants' counsel, in
Opposition to James F. Lowy, Esq.'s Motion for Admission *Pro Hac Vice* ("Scher
Decl."). Additional undisputed facts have also been drawn from the Complaint
("Compl.") and prior opinions in the *In re Ski Train* Litigation.

[2]      *See* Compl. ¶¶ 28-29.

[3]      *See id.* ¶ 30.

[4]      *See id.* ¶ 33.

[5]      *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 230 F.
Supp. 2d 403, 404 (S.D.N.Y. 2002).

Rice, Kohn, and Swift moved for class certification and to be appointed class counsel.[6] During the summer of 2003, the remaining two defendants to this action – Speiser Krause ("Speiser") and Ken Nolan – joined Nagel, Rice, Kohn, and Swift (collectively, "Defendants") as proposed class counsel.[7] In October 2003, this Court certified an opt-in class and appointed Defendants as class counsel.[8] In their capacity as class counsel, Defendants represented all plaintiffs – American and foreign.[9]

Plaintiffs claim that between 2002 and 2006, Defendants made negligent mistakes and neglected the foreign plaintiffs' interests in favor of the American plaintiffs.[10] For example, after the Court dismissed the Complaint against Siemens AG, Defendants chose not to file a motion for relief from the order pursuant to Rule 60(b)(1), (2), or (3) of the Federal Rules of Civil Procedure

---

[6]  *See* Compl. ¶ 35.

[7]  *See id.* ¶ 37.

[8]  *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 220 F.R.D. 195, 199 (S.D.N.Y. 2003), *rev'd on other grounds sub nom.*, *Kern v. Siemens Corp.*, 292 F.3d 120 (2d Cir. 2004).

[9]  *See* Compl. ¶¶ 39, 41-45.

[10]  *See id.* ¶¶ 40-96.

– a right that expired in October 2003.[11]  Similarly, on December 20, 2004, the Second Circuit decertified the class, holding that an opt-in class could not be certified, but that the foreign defendants' claims could be pursued as an opt-out class.[12]  Defendants never refiled on behalf of the foreign defendants.

After the class was decertified, Defendants advised that they would no longer be representing the foreign plaintiffs in the *In re Ski Train* Litigation.[13]  On November 2, 2005, Edward Fagan was retained to represent the foreign plaintiffs.[14] In December 2005, Lowy, along with Robert J. Hantman, joined Fagan as co-counsel.[15]  In May 2006, Lowy was admitted *pro hac vice* in this Court.[16] Although it is disputed whether Defendants continued to represent the foreign plaintiffs after late 2005, Fagan, Lowy, and Hantman had primary responsibility

---

[11]     *See id.* ¶ 54.  *See also* Fed. R. Civ. P. 60(c) (requiring motions pursuant to Rule 60(b) to be filed no more than one year after the entry of the order).

[12]     *See Kern*, 393 F.3d at 129.

[13]     *See* Letter from Rice, Swift and Nolan to Japanese class members, Ex. C to Scher Decl.

[14]     *See* 11/2/05 Hearing Transcript, Ex. D to Scher Decl.

[15]     *See* Lowy Reply Decl. ¶¶ 7, 9, 11, 14.

[16]     *See id.* ¶ 10.

4

for the foreign plaintiffs' claims beginning in late 2005.[17]  On June 19, 2007, the

Court dismissed the foreign plaintiffs' claims on the basis of the doctrine of *forum*

*non conveniens* and the dismissal was affirmed on appeal.

On August 16, 2007, this Court disqualified Fagan in the *In re Ski*

*Train* Litigation due to ethical violations.[18]  Lowy continued to represent the

foreign plaintiffs thereafter, including on appeal.  On November 19, 2007, Fagan,

as well as one of the plaintiffs in this action –Bernd Geier – filed an action for legal

malpractice against Lowy and others.[19]  That action was voluntarily dismissed.[20]

As part of that action, Lowy submitted a declaration to the court disputing whether

Geier was a plaintiff in the *In re Ski Train Litigation*.[21]

---

[17]     *See id.* ¶¶ 2, 12; Lowy Decl. ¶ 5.

[18]     *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
No. 01-md-1428, 2007 WL 2398697, at *3 (S.D.N.Y. Aug. 16, 2007).

[19]     *See* Complaint, *Fagan v. Lowy*, No. 07 Civ. 10293 (Nov. 19, 2007),
Ex. O to Scher Decl.  This case was initially brought in New York Supreme Court
under Index No. 115473/07 and was removed to the Southern District of New
York.

[20]     *See* Lowy Reply Decl. ¶ 46(d).

[21]     *See* Affidavit of James F. Lowy in Support of Order to Show Cause
(with Temporary Restraints), and Discharge of the Temporary Restraints Imposed
by the Supreme Court ¶ 27, *Fagan*, No. 07 Civ. 10293, Ex. E to Scher Decl.
("Lowy Aff.") (stating that Geier "was not a plaintiff" in the *In re Ski Train*
Litigation because although Geier held power of attorney for his father, a survivor
of the Ski Train Fire, "there is no assertion Geier himself thus became [an *In re Ski*
*Train* Litigation] client.  It is also alleged that he is some sort of 'personal

On December 1, 2009, plaintiffs instituted the instant litigation against

Defendants.[22]  Plaintiffs' claims center on, among other things, Defendants' failure

to (1) seek certification of the foreign plaintiffs as part of an opt-out class in 2004,

2005, or 2006; and (2) seek reversal or reconsideration of this Court's dismissal of

the claim against Siemens AG.[23] Defendants assert that they intend to name Lowy

as a third-party defendant for contribution and/or indemnification.[24]

## III.   APPLICABLE LAW

### A.   Disqualification

"The disqualification of an attorney in order to forestall violation of

ethical principles is a matter committed to the sound discretion of the district

court."[25]  This authority derives from a court's "inherent power to preserve the

---

representative' for his father, but this surely is meant only in the colloquial sense.
There is no allegation Geier's father is incapacitated or that Geier was ever
appointed a 'personal representative' by a court . . .").

[22]    Compl. ¶ 130.  *See also id.* ¶¶ 154-227.

[23]    *See* Hochstadt Decl. ¶¶ 18, 19.

[24]    *See* Defendants' Joint Memorandum of Law in Opposition to
Plaintiffs' Motion for an Order Granting James F. Lowy, Esq.'s Permission to
Appear Before this Court *Pro Hac Vice* ("Def. Opp.") at 11-14.

[25]    *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72-73 (2d Cir. 1990)
(citations omitted).

integrity of the adversary process."[26]  Disqualification is only warranted in the rare circumstance where an attorney's conduct "poses a significant risk of trial taint."[27]

"Motions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are often interposed for tactical reasons" and may have significant adverse consequences to the client.[28]  A court should review a request for disqualification with "fairly strict scrutiny."[29]  Although any doubts are to be resolved in favor of disqualification,[30] the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary.[31]

## B.  Advocate-Witness Rule

Attorneys appearing before this Court must abide by the New York

---

[26]  *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citations and quotation marks omitted).

[27]  *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981).

[28]  *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (quotation marks omitted).

[29]  *Murray v. Metropolitan Life Ins.* Co., 583 F.3d 173, 178 (2d Cir. 2009 (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).

[30]  *See Cheng v. GAF Corp.*, 631 F.2d 1052, 1059 (2d Cir. 1980), *vacated on other grounds and remanded*, 450 U.S. 903 (1981).

[31]  *See Murray*, 583 F.3d at 178 (citing *Lamborn*, 873 F.2d at 531) (alteration omitted); *Evans v. Artek*, 715 F.2d 788, 794 (2d Cir. 1983).

State Rules of Professional Conduct (the "Rules").[32]  Rule 3.7(a) addresses the

situation where an attorney may be a witness.  Commonly referred to as the

"advocate-witness" rule, Rule 3.7(a) states:

> A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:  (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.

> The advocate-witness rule is based upon concerns that:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.[33]

"In order to disqualify an attorney on the basis of the advocate-witness rule, a party

---

[32]     *See* S.D.N.Y. Local Rule 1.3.

[33]     *Murray*, 583 F.3d at 178 (citing *Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282-83 (2d Cir. 2004)).

must demonstrate that the testimony is both necessary and substantially likely to be prejudicial."[34] "Prejudice in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'"[35]

### C.    Conflict of Interest

Rule 1.7 and Canons 5 and 9 of the American Bar Association Code of Professional Responsibility prohibit conflicts of interest.[36] Rule 1.7 provides:

> [A] lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interest; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

> Although not binding, "disqualification motions often benefit from

---

[34]    *National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 280-81 (S.D.N.Y. 1996).

[35]    *Murray*, 583 F.3d at 178 (quoting *Lamborn*, 873 F.2d at 531) (quotation marks omitted).

[36]    Defendants raise only Canon 9 in their Opposition. *See* Def. Opp. at 8. It is apparent from Defendants' conflict-of-interest discussion that Rule 1.7 and Canon 5 are also relevant.

guidance offered by the American Bar Association (ABA) [Code] . . . ."[37]   The Code consists of three separate but interrelated parts, including Canons, which are "statements of axiomatic norms."[38]   Within each Canon are corresponding Ethical Considerations and Disciplinary Rules.   Disqualification can be ordered "where an attorney's conflict of interests in violation of Canons 5 and 9 . . . undermines the court's confidence in the vigor of the attorney's representation of his client."[39]

Similar to the prohibition found in Rule 1.7, Canon 5 of the Code suggests that a lawyer should exercise independent professional judgment on behalf of a client.   Ethical Consideration 5-1 states that: "[t]he professional judgment of a lawyer should be exercised . . . solely for the benefit of the client and free of compromising influences and loyalties. . . . [T]he lawyer's personal interests . . . should [not] be permitted to dilute the lawyer's loyalty to the client."   Disciplinary Rule 5-101 instructs that "a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably

---

[37]   *Hempstead Video, Inc.*, 409 F.3d at 132.

[38]   New York Code of Prof. Resp., Preliminary Statement, *reprinted in* N.Y. Jud. Law App.

[39]   *Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citing *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977) and *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976)) (footnote omitted).

may be affected by his own financial, business, property, or personal interests."

Canon 9 generally provides that a lawyer should avoid even the appearance of professional impropriety.  Ethical Consideration 9-6 provides:

> Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; . . . to observe the Code of Professional Responsibility; . . . and to strive to avoid not only professional impropriety but also the appearance of impropriety.

## IV.   DISCUSSION

Defendants oppose the foreign plaintiffs' *pro hac vice* motion on the grounds that Lowy should be disqualified from representing plaintiffs.  According to Defendants, Lowy (1) is a material fact witness; (2) will be named as a third-party defendant for contribution and/or indemnification; and (3) was sued by one of the plaintiffs in this action for legal malpractice in connection with the *In re Ski Train* Litigation and made sworn statements adverse to that plaintiff.  For all three reasons, Lowy is disqualified.

*First*, Lowy is disqualified under the advocate-witness rule.  The malpractice allegedly occurred when Defendants failed to move to certify the foreign plaintiffs as an opt-out class in either 2004, 2005, or 2006 or move this Court for relief from its judgment dismissing Siemens AG.  As co-counsel to the foreign plaintiffs in 2005 and responsible for the foreign plaintiffs' unsuccessful

appeal, Lowy had direct, personal, involvement in the alleged acts of malpractice.
Even counsel for the foreign plaintiffs recognizes that Lowy had at least *some*
involvement arguing only that "he was not involved in the case at all at the time
when *most of the acts of malpractice occurred*."[40]

In addition, the advocate-witness rule is intended to address four
concerns. All are present here. Lowy declares that he will testify that Defendants
engaged in malpractice while he and his co-counsel attempted to rectify those
mistakes.[41] Given Lowy's involvement with the underlying lawsuit and the prior
malpractice action brought against him, this testimony may cause jurors and this
Court to fear that he is distorting the truth as a result of bias in favor of plaintiffs or
to protect his own interests. Defendants' counsel will vigorously cross-examine
Lowy regarding the actions he took or failed to take as the foreign plaintiffs'
counsel in the *In re Ski Train* Litigation. Defendants' counsel will seek to impeach
Lowy's credibility with regard to whether it was Defendants or Lowy that caused
the foreign plaintiffs' alleged harm. Such cross-examination places opposing
counsel in a difficult situation and will require Lowy to vouch for his own
credibility. Lowy's simultaneous representation of plaintiffs and his need to

---

[40]      Hochstadt Decl. ¶ 14 (emphasis added). *Accord* Lowy Decl. ¶ 12
(claiming that he has "no first hand knowledge that could make [him] a witness").

[41]      *See* Lowy Reply Decl. ¶¶ 20, 21, 41.

12

defend his own conduct will "'blur the line between argument and evidence [such] that the jury's ability to find facts [will be] undermined.'"[42]

Furthermore, Lowy's testimony is both necessary and prejudicial.[43] Lowy did not merely play a passive role in the *In Re Ski Train* Litigation. Instead, Lowy was one of only three attorneys – one of which was disqualified in 2007 – that zealously represented the foreign plaintiffs during the precise time when the alleged malpractice was ongoing. Lowy will need to explain why he did not take steps to minimize plaintiffs' alleged harm, such as by seeking certification of the foreign plaintiffs as an opt-out class in the wake of the Second Circuit opinion or pursuing a judgment on appeal with regard to the dismissal of the claims against Siemens AG. Any such testimony will necessarily be adverse to plaintiffs' position and undermine their claim that Defendants' malpractice caused their harm. Because his testimony is both necessary and prejudicial, I find that Lowy must be disqualified under the advocate-witness rule.[44]

---

[42]    *Ramey*, 378 F.3d at 283 (quoting *United States v. Arrington*, 867 F.2d 122 (2d Cir. 1989)) (alteration omitted).

[43]    *Cf.* Reply Memorandum of Law in Further Support of the Motion for *Pro Hac Vice* Admission of James F. Lowy Esq. and For Other Relief ("Pl. Reply") at 3 (asserting that Lowy has no unique knowledge); Lowy Reply Decl. ¶ 15.

[44]    *Cf. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 937 F. Supp. at 280-81 (holding that attorney was not disqualified under the advocate-witness rule

*Second*, I find that Lowy's presence as both an attorney and a third-party defendant presents a conflict of interest in violation of Rule 1.7 and Canons 5 and 9. Defendants intend to name Lowy as a third-party defendant for contribution and/or indemnification.[45] Defendants contend that Lowy should be disqualified from representing plaintiffs due to the conflict of interest presented by his position as both plaintiffs' counsel and a third-party defendant. Plaintiffs attempt to rebut disqualification on this ground by asserting that whether Lowy will be named a third-party defendant is "mere speculation."[46] I disagree. Given Lowy's prior involvement in this case during the time period in question and Defendants' stated intention to name him as a third-party defendant, I find that it is a near certainty, and not merely speculative, that he will be named as a third-party defendant.[47]

_____

where his proposed testimony concerned attorneys' fees and corroboration of other testimony relating to an uncontested issue and was otherwise cumulative and disqualification would result in substantial hardship on the attorney's client).

[45]    *See Herkrath v. Gaffin & Mayo, P.C.*, 597 N.Y.S.2d 34, 34 (1st Dep't 1993) (holding that attorneys sued for malpractice were entitled to assert third-party complaint for contribution and indemnification against subsequent attorney hired by client); *Hansen v. Brognano*, 524 N.Y.S.2d 862 (3d Dep't 1988) (same).

[46]    Pl. Reply at 8.

[47]    Defendants also intend to name Fagan as a third-party defendant. *See* Def. Opp. at 12. Having disqualified Fagan in the *In re Ski Train* Litigation due to ethical violations, *see In re Ski Train*, 2007 WL 2398697, I must recuse myself from this case if Fagan is named as a party in this action.

14

Plaintiffs also argue that, even if Lowy is named as a third-party defendant, Lowy may serve as plaintiffs' counsel and appear as a defendant "in the absence of some inherent conflict or other basis of disqualification."[48]  For support, plaintiffs cite two cases – *Bottaro v. Hatton Associates*[49] and *Theobald v. Botein, Hays, Sklar & Herzberg*.[50]  In *Bottaro* and *Theobald*, a law firm was permitted to proceed as counsel where a member of the firm or the law firm itself was or would be a party to the litigation.  In both cases, the law firm or law firm member and the firm's client were on the *same side* of the litigation.[51]

By contrast, Lowy would be on opposing sides of this litigation.  He would represent plaintiffs in pursuit of their malpractice claims while simultaneously defending his own potential responsibility for their alleged damage.  Lowy could not reasonably be expected to maintain full candor with the Court and

---

[48]     *Id.* at 7 (citing 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.")).

[49]     680 F.2d 895, 896 (2d Cir. 1982).

[50]     465 F. Supp. 609, 610 (S.D.N.Y. 1979).

[51]     *See Bottaro,* 680 F.2d at 898 (permitting a law firm to represent all plaintiffs even though one of the plaintiffs was a member of the firm); *Theobald,* 465 F. Supp. at 610 (permitting a law firm to represent itself as a defendant and members of the firm that would be witnesses for the defense).

advocate zealously for his clients when he could be found liable if his clients are successful. Such a scenario presents a unique set of facts that results in a conflict of interest and requires disqualification.

     *Finally*, I find that Geier's prior malpractice suit against Lowy in connection with the *In re Ski Train* Litigation and the conflicting statements Lowy made about Geier's status as a plaintiff in connection with that suit require disqualification as well. Lowy cannot be expected to represent Geier in a malpractice suit against other attorneys arising from the same litigation for which Geier previously sued Lowy for malpractice. Moreover, as defendants point out,[52] whether plaintiffs were ever represented by Defendants is an issue in the current action. Given Lowy's prior sworn statement that Geier was never a plaintiff in the *In re Ski Train* Litigation,[53] Lowy cannot now claim on his client's behalf that Geier *was* a plaintiff. Geier would be substantially prejudiced in the current litigation with Lowy as his counsel. If Lowy's conflicts were limited to those he has with Geier, Geier may have been able to retain new counsel while Lowy represented the remaining plaintiffs. However, these conflicts, coupled with those discussed above, pose a significant risk of trial taint and undermine the Court's

---

[52]    *See* Def. Opp. at 10-11.

[53]    *See* Lowy Aff. ¶¶ 21, 22.

confidence in Lowy's ability to represent any plaintiffs in this litigation with vigor.

## V. PLAINTIFFS' REMAINING MOTIONS

In conjunction with their February 4, 2010 motion to admit Lowy *pro hac vice*, plaintiffs also moved for pre-answer discovery. Specifically, plaintiffs requested an order (1) compelling Defendants to immediately release all files in their possession related to the *In re Ski Train Litigation* and the Austrian mediation; (2) compelling Defendants' immediate production of Rule 26(a) disclosures; (3) and to preserve all files and electronically stored information related to Defendants' representation in the *In re Ski Train* Litigation and the Austrian mediation.[54] During the February 4, 2010 conference in this action, Defendants agreed to produce their *In re Ski Train* Litigation files upon receipt of authorization from plaintiffs.[55] As a result, plaintiffs' first motion to compel is moot. With regard to plaintiffs' remaining two requests, I stated at the February 4, 2010 conference that discovery on the merits would be stayed pending the resolution of defendants' anticipated motions to dismiss.[56] Nonetheless, defendants are ordered to preserve all files and ESI related to defendants'

---

[54] *See* Plaintiffs' Notice of Motion for *Pro Hac Vice* Admission of James F. Lowy Esq. And For Miscellaneous Other Relief.

[55] *See* 2/4/10 Hearing Transcript at 11:2-13.

[56] *See id.* at 24:5-10.

17

representation in the *In re Ski Train* Litigation as well as the Austrian mediation.

## VI.    CONCLUSION

Although mindful of plaintiffs' right to choose their own counsel,[57] Lowy's involvement in the litigation underlying this malpractice action presents one of the rare instances where an attorney's presence poses a significant risk of trial taint.  Therefore, Lowy is disqualified from representing plaintiffs in this action and plaintiffs' motion to admit Lowy *pro hac vice* is denied.

The Clerk of the Court is directed to close this motion (Docket No. 20).  A conference is scheduled for March 31, 2010 at 5:00 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 22, 2010

---

[57]      *See* Mitsumoto Decl. (requesting Lowy's admission *pro hac vice*).

-Appearances-

**For Plaintiffs:**

Joy Hochstadt, Esq.
Joy Hochstadt P.C.
300 Central Park West
Suite 2E
New York, New York 10024
(212) 580-9930

**For Defendants Speiser Krause LLC and Ken Nolan Esq.:**

Barry Jacobs, Esq.
Shari Debra Sckolnick, Esq.
Abrams, Gorelick, Friedman & Jacobson, P.C.
115 Broadway, 11th Floor
New York, New York 10006
(212) 422-1200

**For Defendants Kohn Swift & Graf LLC and Robert Swift, Esq.:**

Brett A. Scher, Esq.
Wilson Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York 10604
(212) 490-3000

**For Defendants Nagel Rice LLC and Jay Rice, Esq.:**

Lauren Jill Rocklin, Esq.
Shelowitz & Associates, PLLC
11 Penn Plaza, 16th Floor
New York, New York 10001
(212) 490-3000